[Civ. No. 5550.   Third Appellate District.—December 28, 1935.]

L. A. IRELAND, Appellant, v. RAY L. RILEY, as State Controller, etc., et al., Respondents.

Heller, Ehrman, White & McAuliffe for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondents.

Guy Richards Crump, as *Amicus Curiae* on Behalf of Respondents.

PLUMMER, J.—Action to enjoin the defendant, State Controller, from drawing a warrant in payment of the price of certain stamps alleged to have been illegally contracted for by the State Board of Equalization. The defendants had judgment, and the plaintiff appeals.

The question presented for determination is as follows: Has the State Board of Equalization, under section 33 of chapter 330 of the Laws of 1935, power to enter into a valid contract for the printing and purchasing of liquor excise stamps, without first obtaining the approval of the state department of finance, as provided for in section 675 (a) of the Political Code?

On August 15, 1935, the bureau of purchases, at the request of the State Board of Equalization, called for bids for the printing of one hundred fifty million excise stamps, to be used in taxing the sale of distilled liquor under the provisions of the Alcoholic Beverage Control Act of 1935. The bids were to be based upon performance of the work, either by the decalcomania or lithographic process. The Kolograph Corporation of Los Angeles, California, submitted a bid for $51,000 for printing the stamps by the decalcomania process. The Union Lithograph Company of San Francisco, California, submitted a bid in the sum of $27,000 for printing the stamps by the lithographic process. The American Decalcomania Company of Chicago, Illinois, submitted a bid in the sum of $107,250. The board accepted the bid of the Chicago company, and referred the contract to the state department of finance for approval. This department notified the board of its disapproval of the proposed contract. Notwithstanding such disapproval the Board of Equalization authorized the American Decalcomania Company of Chicago to commence printing the stamps. No formal contract has as yet been entered into. The facts stipulated at the trial were to the effect that the department of finance would not, nor would any officer thereof, approve a contract with the American Decalcomania Company of Chicago, for printing the stamps.

This action is based upon the ground that any contract with the American Decalcomania Company of Chicago would be invalid unless approved by the department of finance, as provided for in section 675 (a) of the Political Code, and this action seeks to prevent the application of any of the moneys of the state toward payment upon such alleged invalid contract.

Section 654 of the Political Code reads: "A department of the government of the State of California to be known as the Department of Finance is hereby created. The department shall have general powers of supervision over all matters concerning the financial and business policies of the state, and shall, whenever it deems it necessary, or at the instance of the governor, institute, or cause the institution of such investigations and proceedings as may be deemed proper to conserve the rights and interests of the state."

█ The unmistakable purpose of the legislature in adopting this section of the code is to conserve the financial interests of the state, and to prevent, as far as possible, any improvident acts by any of the departments thereof; to give to the state such powers as would enable the department of finance to control the expenditures of state money by any of the several departments of the state. The general powers extend to the supervision of all the financial and business policies of the state, which necessarily include supervision of the expenditure of moneys belonging to the state. In pursuance of this policy and to render the intent of the legislature effective, in 1927 (Stats. 1927, p. 455), the legislature adopted section 675 (a), *supra*. That section has to deal with departmental contracts, and provides that all contracts entered into by any state officer, board or commission, department or bureau, etc., for the purchase of supplies, must, before any contract is valid, receive the approval of the department of finance, and that such contract does not become effective until such approval is given. The section further provides that no state officer, board, commission, department, or bureau shall purchase supplies and materials, or either, in the open market, unless permission has been given therefor. The section further gives powers to the department of finance not necessary to be specifically mentioned herein.

Section 33 of the Alcoholic Beverage Control Act, adopted by the legislature in 1935, so far as pertinent here, reads as

follows: "Such stamps shall be sold by the board only to persons holding valid distilled spirits manufacturer's licenses, rectifier's licenses, distilled spirits and wine importer's licenses or distilled spirits wholesaler's licenses issued under this act or the State Liquor Control Act; provided, that until July 1, 1935, the board shall sell a sufficient number of such stamps, to stamp stocks of distilled spirits on hand, to persons holding valid on or off-sale licenses for liquor other than beer and wine, issued under the State Liquor Control Act; provided further, that the board may thereafter, in its discretion, sell such stamps to such holders of on or off-sale distilled spirits licenses as it may determine. On and after July 1, 1935, all distilled spirits delivered by any manufacturer, rectifier, importer or wholesaler of distilled spirits to any person holding an on or off-sale distilled spirits license issued under this act or an on-sale license for liquor other than beer and wine issued under the State Liquor Control Act, must be accompanied by a sufficient number of stamps purchased from the board, to stamp the packages containing such distilled spirits. Every manufacturer, rectifier, importer or wholesaler of distilled spirits who delivers distilled spirits in violation of this section shall be guilty of a misdemeanor. Such stamps shall be of such size, type, and character as the board shall determine; provided, that all such stamps must be of a character, design, and process which will give the state the maximum amount of protection against counterfeiting. The board shall have full charge and control of the issuance, securing, or purchase and of the sale of all such stamps and shall keep a record of all stamps sold. At the time such stamps are attached to the packages of distilled spirits, they shall immediately be canceled by indelibly writing or stamping thereon the number of the licensee attaching the stamp and the date of cancellation."

On the theory that the legislature so intended by the use of the word "purchase" in the fourth paragraph of section 33, *supra*, it is contended by the respondents and held by the trial court to relieve the Board of Equalization from the provisions of section 675 (a), *supra*, and that the use of the word "purchase" in said paragraph necessitates holding a repeal by implication of the power of the department of finance to supervise contracts for the purchase of liquor stamps, and of the necessity of an approval of any contract

by the department of finance to render effective the action of the State Board of Equalization.

Does the wording of section 33, *supra,* necessitate the holding that any of the provisions of section 675 (a), *supra,* are repealed by implication? In the answer to this question consideration must first be given to the purposes controlling the adoption of the sections of the code having to do with the department of finance, and also the adoption of chapter 330 by the legislature in 1935. The fact that the sections of the Political Code having to do with the department of finance and the Alcoholic Beverage Control Act are dealing with distinct and separate subject-matters, must be constantly kept in mind. The title of the act, preceding the adoption of the sections of the code creating the department of finance, reads: "An act to add a new article to chapter 3 of Title 1 of Part 3 of the Political Code, to be numbered 'Article XVIII', embracing sections 654 to 685, both inclusive, relating to the Department of Finance." The title to the Alcoholic Beverage Control Act reads: "An act to license, regulate and control the manufacture, transportation, sale, purchase, possession and disposition of alcoholic beverages; to levy an excise tax on the sale of alcoholic beverages; to provide for the licensing of the manufacture, distribution and sale of alcoholic beverages; to prescribe penalties for the violation of this act; to make an appropriation for the enforcement of this act; to take effect immediately."

The first act just mentioned has to do with the financial affairs of the state, with the entering into contracts by the several departments of the state, and the expenditure of the moneys belonging to the state, all of which, for the purpose of conserving the public and financial interests of the state, must pass through, and receive the approval of the department of finance. The purpose of the Alcoholic Beverage Control Act is to give to the State Board of Equalization jurisdiction of the procuring of intoxicating liquors from the time it leaves the distillery until it reaches the ultimate consumer. It has nothing to do with the entering into contracts. The subject of contracts is not even mentioned.

By providing for the use of stamps the legislature has undoubtedly sought to enable the State Board of Equalization to outline a procedure which would enable the State Board to prevent the importation, sale or distribution of illicit or

unlicensed liquors, evading payment of the license taxes imposed by the act. The particular language involved under section 33, *supra,* is as follows: "The Board shall have full charge and control of the issuance, securing or purchase, and of the sale of all such stamps, and shall keep a record of all stamps sold." A careful reading of this sentence exhibits the fact that the words "issuing, securing or purchase" are used in connection with the obtaining of stamps by those proposing to engage in a business necessitating the use thereof; in other words, the Board of Control has power to provide for the issuance and securing, and the purchase, by liquor dealers of every class, of the necessary stamps. By the use of the word "purchase", the legislature has given to the State Board of Control an additional instrumentality by which it may provide the form to be used by anyone dealing in intoxicating liquors, showing that such person is duly licensed and is entitled and required to become a purchaser of stamps. This includes the manner of liquor dealers securing stamps, all to be in accordance with the procedure adopted by the board for the issuance thereof. A record is then to be kept of all stamps sold. There would be no meaning, really, to the words "record of all stamps sold" if it did not include a keeping of the record of all of the names of the purchasers of stamps, which gives to the board, in following up the name of the purchaser, the number of stamps sold to him, and the different packages of liquor handled by the purchaser, a ready means of determining whether there has been or is any evasion of the payment of any taxes imposed by the Alcoholic Beverage Control Act. To us, this unquestionably is the intent and purpose of section 33, *supra,* and does not necessitate any holding of the repeal by implication or any of the powers of the state department of finance.

Again, the Alcoholic Beverage Control Act contains a long list of acts and amendments of acts specifically repealed, which of course limits the expressed intent of the legislature. Had the legislature intended to exempt contracts by the State Board of Equalization in relation to contracts, the adding of the words "in entering into contracts" for stamps, the Board of Equalization is exempt from the provisions of section 675 (a), *supra.*

Again, section 33, *supra,* is specific in its intent to control, prescribe for, limit, and also *compel* liquor dealers to pur-

chase stamps from the Board of Equalization. With that intent standing out clearly in the section it is not unreasonable to hold that the legislature did not have in mind the repealing of any of the general powers vested in the state department of finance.

The authorities are clear that repeals by implication are not favored. We quote here from 39 C. J., page 905, section 510, which sets forth the rule approved by all the authorities, as follows: "The repeal of statutes by implication is not favored. The courts are slow to hold that one statute has repealed another by implication, and they will not make such an adjudication if they can avoid doing so consistently, or on any reasonable hypothesis, or if they can arrive at another result by any construction which is fair and reasonable. Also, the courts will not enlarge the meaning of one act in order to hold that it repeals another by implication, nor will they adopt an interpretation leading to an adjudication of repeal by implication unless it is inevitable, and a very clear and definite reason therefor can be assigned. Furthermore, the courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears. The implication must be clear, necessary and irresistible. The foregoing rules are particularly applicable where the statute claimed to have been repealed has for a long time been rigidly adhered to and construed as being in existence, as well as where it has been given a settled meaning by adjudications of the court of last resort, or where subsequent legislation shows that the legislature deemed it still in existence. Also, the rules are especially applicable where a repeal would lead to absurd consequences, or where the statute is an important one relating to a governmental matter, and a repeal would be destructive and ruinous of the public welfare, impair a settled prerogative of the government, or leave no law whatever on a subject concerning which it is necessary that there be a positive law of some sort."

We also quote section 515 of the same volume, which sets forth the rule to be followed when the subject and purpose of the acts are different, as follows: "The general rule that a statute prevails over, and impliedly repeals a prior inconsistent one, applies where both statutes relate to the same subject. While, except in a few jurisdictions, two statutes are

not deemed repugnant to each other, unless they relate to the same subject, it is not sufficient to establish an implied repeal by inconsistency or repugnancy that the subsequent law covers some, or even all, of the cases provided for by the prior statute, since it may be merely affirmative, cumulative or auxiliary. Also, one statute is not impliedly repealed by another on the ground of inconsistency or repugnancy unless the two statutes have the same object or purpose.''

In the case of *Niceley* v. *County of Madera,* 111 Cal. App. 731 [296 Pac. 306], this court had occasion to consider the subject of repeal by implication, and there said: ''As stated in 23 California Jurisprudence, page 697, in order that one statute may repeal another by implication it seems clear that both must deal with the same subject-matter. An act is not repealed by a subsequent act relating to another matter, nor is a section repealed by a subsequent section if the subject of the two sections are distinct and separate, and in nowise in conflict with each other.'' We can also apply the language there used to the circumstances here presented. We there further said: ''We think the foregoing analysis shows that the two sections are distinct and deal with different subjects. . . . The law relative to the repeal of statutes by implication is clearly set forth in 23 California Jurisprudence, page 691 et seq., and shows clearly that one section of the code will not be repealed by a subsequent section making no mention of the prior section, unless there is an irreconcilable conflict.''

By interpreting section 33, *supra,* as we have herein, we hold that it reasonably appears that there is no irreconcilable conflict, and actually no conflict whatever between section 33, *supra,* and section 675 (a), *supra,* when the purpose and intent of the legislature in each instance is carefully analyzed and considered. As was said in the case of *Lillywhite* v. *Superior Court,* 80 Cal. App. 533 [251 Pac. 945, 949] : ''Such a repeal, if it has been made manifest, must have been by inference. Repeals by inference are repugnant to established rules of statutory construction. Only when the intention to repeal by inference is clear, will a court be justified in holding that an enactment was meant to repeal a former existing one.'' And as further said in *Estate of Brewer,* 156 Cal. 89 [103 Pac. 486] : ''Repeals by implication are not favored. They will be held to have taken place only where there is an irrecon-

cilable conflict between the two acts, so that it is manifest that the legislature did not intend both to be effective."

In the language of the court, *County of Inyo* v. *Hess,* 53 Cal. App. 415 [200 Pac. 373], speaking of repeals by implication not being favored, we find the following: "This is particularly true where the effect of such repeal is to impair a settled prerogative of the government, as in the instant case, the state's control of its highways." The settled prerogative of the government by the establishment of the department of finance, and giving it control and supervision over the acts of the different departments is just as we have stated, to prevent the entering into of any improvident contracts or the wasteful expenditure of the moneys belonging to the state.

We do not need to enter into a discussion of the use of the word "or" and point out that in many instances the intention is to refer to the same act or subject-matter. This, however, we think appears when we set forth the words "issuance, securing or purchase". These words, we think, relate to the one subject-matter, as we have stated, of obtaining stamps by dealers in intoxicating liquors.

Other authorities might be cited supporting what we have heretofore set forth, but what we have stated we think is a reasonable construction to be placed upon the words used by the legislature in adopting section 33, *supra,* and absolutely repels the idea of repeal by implication, and that such construction permits each act to be given effect without any limitation upon the powers of the department of finance, as provided for in the different sections of the Political Code.

It follows from what we have said that the judgment should be reversed, and the cause remanded to the trial court with instructions to enter judgment in accordance with the prayer of the plaintiff's complaint.

And it is so ordered.

Pullen, P. J., and Thompson, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 26, 1936. Waste, C. J., Shenk, J., and Thompson, J., voted for a hearing.