[Civ. No. 7467.   Third Dist.   Sept. 3, 1948.]

M. P. HOWARD et al., Respondents, v. EDGAR E. LAMPTON, as Director of the Department of Motor Vehicles, etc., et al., Appellants.

Fred N. Howser, Attorney General, and Wilmer W. Morse, Deputy Attorney General, for Appellants.

James H. Phillips for Respondents.

ADAMS, P. J.—This is an appeal by respondents from a judgment of the Superior Court of Sacramento County ordering the issuance of a peremptory writ of mandate commanding respondents to allow the claims of petitioners for payment for overtime worked by them while employed as members of

the Highway Patrol of the Department of Motor Vehicles of this state.

Petitioner Howard retired from service on April 30, 1946, and claimed compensation for overtime hours worked between January 1, 1939, and September 28, 1943, for which no compensating time off had been granted. Petitioner Herzinger resigned January 1, 1946, and claimed compensation for extra hours worked from August 7, 1940, to December 11, 1942, for which he had not been allowed compensating time off.

That petitioners worked the overtime hours for which they claim compensation is not denied by respondents, nor is it claimed that compensating time off was ever allowed them. But appellants on this appeal claim that petitioners made no showing that compensating time off for overtime worked had been accumulated by them under any rule or practice established by the appointing power or statute in effect when the overtime was worked; that their causes of action are barred by statutes of limitation; that petitioner Herzinger waived a portion of his claim by failing to take compensating time off during his employment; that Herzinger also waived all claim to cash payment by his failure to prove his overtime in the manner provided by Headquarters Information Bulletin No. 323, issued June 5, 1945; and that the conclusion of the trial court that petitioner Howard is entitled to be paid for overtime hours worked between January 1, 1939, and October 1st of that year is not supported by the findings.

In *Pohle* v. *Christian,* 21 Cal.2d 83 [130 P.2d 417], decided in October, 1942, the right of a civil service employee on separation from the service without fault on his part, to compensation in cash for unused vacation time was established; and in *Clark* v. *State Personnel Board,* 56 Cal.App.2d 499 [133 P.2d 11], decided in January, 1943, a like right to a cash payment for overtime worked for which compensating time off had not been granted was decided. Also in an opinion of the attorney general, rendered on July 26, 1944 (N.S. 5597), it was stated that "The right of a State employee, separated from service without fault, to a lump sum payment upon separation for accrued vacation rights was established in *Pohle* v. *Christian* (Oct. 1942), 21 Cal.2d 83 [130 P.2d 417]. The right to payment under similar circumstances for overtime worked, when departmental rules provided for compensating time off was established in *Clark* v. *Personnel Board* (Jan. 1943), 56 Cal.App. 2d 499 [133 P.2d 11].''

Statutory recognition of the principles enunciated in those decisions appears in section 18005 of the Government Code (based on Stats. 1937, ch. 753, § 150.5, as added by Stats. 1943, ch. 20, § 2, p. 136, approved Feb. 6, 1943), which provides:

"Upon separation from service under Part 2, without fault on his part, a person is entitled to a lump sum payment as of the time of separation for any unused or accumulated vacation or for any time off to which he is entitled by reason of previous overtime work where compensating time off for overtime work is provided for by the appointing power or by rules of the State Personnel Board."

On September 28, 1939, effective October 1, 1939, the chief of the Highway Patrol issued Headquarters General Order No. 295, with reference to "Regular Days off, Accumulative Days, and Overtime," stating therein that it superseded and cancelled Information Bulletin No. 52 issued May 17, 1933, and other previous orders in reference thereto. This order provided that in the future employees ordered by their superiors to work on their regular days off or legal holidays, would be allowed a day in lieu thereof which would be termed an accumulative day, and that such accumulative days must be taken as soon thereafter as practicable and at the convenience of the service. It also provided that "Employees ordered to work beyond the hours ordinarily required or hours overtime in addition to what is considered their regular full day's work, may be allowed time off on the day following or at some other convenient time in lieu of the overtime hours worked. Overtime hours shall be adjusted by the immediate superior of the employee affected and shall not become part of the Headquarters' record."

On August 5, 1942, Headquarters General Order No. 394 was issued, effective that day, providing that: "Employees ordered to work beyond the hours ordinarily required and considered as a full day's work may be allowed compensating time off in lieu of such overtime worked. Such overtime hours may be granted and adjusted by the immediate superior of the employee affected and shall not become a part of the Headquarters record."

On June 5, 1945, the chief of the Highway Patrol, with the approval of the Acting Director of the Department of Motor Vehicles, issued "Information Bulletin No. 323," addressed to all members of the Highway Patrol. It provided that any

claims for overtime hours accumulated prior to September 29, 1943, should be reported to the department in writing, accompanied by evidence in affidavit form in support thereof, on or before June 30, 1945, such affidavits to set forth the number of hours, by date, claimed to have been accumulated during such period, and to be certified by the immediate superior of the claimant. It also provided that if a claim in the form outlined were not presented by June 30, 1945, no overtime hours accumulated prior to September 29, 1943, would be credited, and that failure to so present a claim would be considered a waiver of all claims for overtime worked before September 29, 1943.

As to the effect of Orders No. 295 and No. 394, appellants contend that they did not grant compensating time off, but merely granted authority of an immediate superior to allow it, that petitioners did not show that their immediate superiors had allowed them such time off; and that it was demonstrated, by the provision that overtime hours were not to become part of headquarters records, that it was not intended to make the allowance of compensating time off a *right* under the terms of employment. In short, that whether or not compensating time off should be granted an employee was a matter of discretion on the part of his superior, and that it was not shown by petitioners that such discretion had been exercised in their behalf by their superiors. We find no merit in this contention. The two orders aforesaid were a recognition of the right of an employee to be allowed time off for hours worked in excess of his regular hours of duty. And while such orders left it to the immediate superiors to determine *when* such time off should be taken, they did provide that "overtime *shall* be adjusted" by such superiors, thus making it the duty of such superiors to so adjust them. If such orders were not intended as recognizing a right to compensating time off for all overtime worked, then superiors might grant it to one and not to another, a discrimination which would have been devastating to the morale of the employees and which could not reasonably have been intended.

Nor do we attach any significance to the provisions that overtime hours should not become a part of the headquarters' record, insofar as the right of employees to such time off is concerned. It is not contended that petitioners did not work the overtime hours for which they claim compensation, or that such overtime was not made a matter of record with their immediate superiors. It is quite as reasonable to assume that

this provision had for its purpose a desire not to increase the burden of keeping such headquarters' records as it is to assume that it was meant thereby to limit the right of employees to such compensating time off or leave it to the whim of immediate superiors.

Furthermore, Bulletin No. 323, issued on June 5, 1945, the subject matter of which was declared to be "overtime hours accumulated prior to September 29, 1943," was a recognition by the department itself that employees were entitled by previous orders to such accumulated time off; and the provision therein for the making of such proof indicates that the fact that same had not theretofore been made a part of headquarters' records was not considered as having affected the rights of employees thereto.

■ As for the application of any statute of limitations, the general orders above mentioned contained no provision that time off in lieu of overtime worked must be taken within any specified time. When it should be taken was left to the discretion of the immediate superior; and an employee obviously could not have demanded or taken it except at such time as his superior might allow, depending upon what was deemed by him to be convenient under conditions of the service then existing. ■ Statutes of limitations are not intended to apply to any person when the performance of an act by him is not within his right or power.

■ Appellants rely upon section 52 of the State Civil Service Act as amended (now Gov. Code, § 19630), which provided that "No action or proceedings shall be brought by any person having or claiming to have a cause of action or complaint or grounds for issuance of any complaint or legal remedy for wrongs or grievances based on or related to any civil service law in this state or the administration thereof unless such action or proceeding be commenced and served within one year after such cause of action or complaint or ground for issuance of any writ or legal remedy first arose. . . ."

Plainly, under the circumstances shown by this record, and the decisions in the Pohle and Clark cases, no right in petitioners for the issuance of any writ or legal remedy arose until their separation from the service; they could not have compelled the granting of compensating time off; it was only to be taken at the convenience of the service and at times deemed convenient by their superiors. Therefore, such com-

pensating time off might have been given to petitioners by their superiors at any time before their services terminated. Surely it cannot be said that if such superior officer had not deemed it convenient to give compensating time off within a year or even three years of the time when overtime was worked, petitioners could have compelled it, since it might still be given them by such superior.

■ Appellants also argue that in any event a cause of action on behalf of respondents as to overtime worked prior to October 1, 1939, must be held to have arisen on *August 21, 1945,* when Information Bulletin No. 329 was issued by the department. That bulletin purported to deny and cancel all claims for overtime hours worked prior to September 29, 1943, which had been presented by 46 per cent of the members of the patrol pursuant to instructions contained in Bulletin No. 323. It was recited in said bulletin that considerations upon which the denial and cancellation were based were that it was the general understanding that an officer's salary was in full for all services performed by him, including overtime worked; that it was never intended that overtime hours worked should accumulate indefinitely; that headquarters had no record against which to verify the claims submitted; that it was believed that by failure of an officer to arrange with his superior for compensating time off at the earliest possible date constituted a waiver of overtime; that it was believed that some of the claims or some portion thereof were barred by statutes of limitation; that 60 per cent of the claims filed did not comply with Bulletin No. 323, and that it was believed that in legal effect this may have constituted a waiver; that the fact that officers who had left the service had not been allowed compensating time off or paid a cash equivalent indicated an understanding by the officers themselves that they had no claim for overtime worked prior to September 29, 1943; and that there was no legislative provision for compensating employees for overtime.

This bulletin did not base its refusal to recognize the claims filed on the ground that the appellants were without power to grant cumulative time off, nor deny the tacit recognition in Bulletin 323 that they had such power; and it is a little difficult to arrive at the motive behind its pronouncements in view of the decisions in the Pohle and Clark cases, the opinion of the attorney general herein previously mentioned, and the enactment in 1943 of the legislation now embodied in section 18005 of the Government Code, all of which

preceded the issuance of Bulletin 329. But whatever motivated it, it did not start a statute of limitations running against petitioners, since any right to payment in cash for overtime could only be enforced on separation from the service, and, as hereinbefore stated, claimants could not have compelled the granting of time off the allowance of which was discretionary with their superiors as to time and convenience. Nor do we believe that such bulletin was effective to cancel claims which had been filed pursuant to Bulletin No. 323 which preceded it, the filing of which was, in effect, an acceptance by employees of the offer made by the department in that bulletin.

Petitioners had the right, then conferred by statute, to payment for overtime upon separation from the service, which statute did not limit the time within which such overtime should have been worked; and Order No. 295, which allowed time off in lieu of overtime worked, was still in effect. These petitioners had the right to continue their employment notwithstanding this pronouncement, and to rely upon their statutory right to compensation in cash if and when they might terminate their employment.

The next claim of appellants is that petitioner Herzinger waived a portion of his claim by failing to take compensating time off during his employment. The claim is premised upon a statement contained in a letter written to the chief of the Highway Patrol by Herzinger on June 15, 1945, with which he transmitted a claim for 212 hours overtime, and stated: ''The overtime hours put in on my own detail in my home district I am willing to waive as some of them were worked on my own when there was work to do and it is as much my fault as anyone that I did not take time off for the time put in.'' However, at the trial he furnished proof of 602½ hours overtime worked for which he had not been compensated. This claim was substantiated by daily activities reports which he had made, and is not disputed. The trial court concluded that the language in the letter did not constitute the intentional relinquishment of a known right, and, furthermore, that since appellants claim that by Bulletin 329 all claims filed were rejected, petitioner's offer of waiver was not accepted, and cannot now be relied upon. It may also be noted that Herzinger did not state, nor is it contended, that he had failed to take compensating time when same was offered, or that it had been offered. Rather the contrary is to be inferred.

And, in addition, the record shows that Herzinger had tried repeatedly to get such time off, even going to the chief of the Highway Patrol who told him that he should take the matter up with the district inspector. Finally, we do not find that in the account rendered by Herzinger he included the overtime worked in his home district. If it is so included, appellants have failed to point out the portion of the record containing it.

The next contention of appellants is that Herzinger waived all claims to cash in lieu of overtime by failing to prove such overtime in the manner provided by Bulletin No. 323. Herzinger's claim was not certified by his immediate superiors, but he explained at the trial that he was furnished with a copy of the bulletin less than a week before the date fixed therein for filing such claims, and did not have time to circulate it for certification; that he had worked overtime under five different captains throughout the state, and that one of his immediate superiors had died and another was in the military service. It was not shown that Herzinger's report of overtime work is not correct; also the evidence shows that the department had a record of same through official daily reports which were filed in the field offices, and copies filed in the headquarters office of the department, weekly. The trial court held that since the overtime worked by petitioner was all performed by him prior to the issuance of Bulletin 323, the department could not forfeit his rights by requiring him, after the event, to furnish proof in a specified form and within a specified time, nor could it decree that he must be considered as having waived his claims if they were not presented in conformity with its ultimatum. We are in accord with that conclusion.

Finally appellants urge that the conclusion that petitioner Howard is entitled to be paid for extra hours worked between January 1 and October 1, 1939, is not supported by the findings. We find no merit in this claim. The petition of this claimant alleged that he worked the overtime hours set forth, including hours worked prior to October 1, 1939, and the court found such allegation to be true. But, say appellants, Order No. 295 was not issued until September 28, 1939, therefore there was no authority for granting compensating time off at the time those hours were worked. But Bulletin 323 specifically provided for the granting of compensating time off for overtime hours worked prior to September 29, 1943, on the making of proof thereof in the manner provided, and

stated, regarding what it designated as Account No. 1, "There will be added to this account all overtime hours, if any, proven to have been accumulated by members of the Patrol prior to September 29, 1943, as hereinafter provided, . . ." This was a tacit admission that such authority existed. Also, in an opinion rendered by the attorney general April 9, 1940 (1-NS2496), it was said: "Situations will arise from time to time where certain employees in an office may be required in certain emergencies to work a number of hours of overtime for one or more days in a week. The emergency may be such that the officer or board cannot procure the services of some other person to do this overtime work. It seems entirely reasonable and in accord with efficient and humane office management that the head of the office should grant to such an employee compensating time off for the extra hours worked under such circumstances. Such compensating time off does not constitute additional payment for overtime. The monthly salary of the employee is not increased."

In Howard's case proof of his overtime was made in conformity with those requirements. No limitation was made in Orders No. 295 or No. 394, or in Bulletin No. 329, regarding hours worked prior to October 1, 1939, and at the trial no objection to Howard's account was interposed on this ground. Appellants are therefore hardly in a position to say here for the first time that the offer and promise made in said bulletin must be held invalid, or that they had no right to grant compensating time off for the overtime hours worked by Howard prior to its issuance, or prior to October 1, 1939. It is also to be noted that section 18005 of the Government Code, enacted in 1943, did not limit the time from which overtime should be reckoned, and that it provided for payment on separation from the service for previous overtime work "where compensating time off for overtime work *is* [not was] provided for by the appointing power or by rules of the State Personnel Board." (Italics added.)

The judgment and order appealed from are affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied October 1, 1948, and appellants' petition for a hearing by the Supreme Court was denied October 28, 1948. Edmonds, J., and Schauer, J., voted for a hearing.