[Sac. No. 6282.   In Bank.   Apr. 1, 1954.]

FLORENZ TREU, Respondent, v. ROBERT C. KIRKWOOD, as State Controller, et al., Appellants.

Edmund G. Brown, Attorney General, Wilmer W. Morse and Marcus Vanderlaan, Deputy Attorneys General, for Appellants.

James H. Phillips for Respondent.

EDMONDS, J.—From 1947 to 1949, Florenz Treu was a noncivil service employee in the office of the lieutenant governor. By writ of mandate, the state controller and the treasurer have been ordered to approve and pay her claim "for overtime worked . . . for which petitioner was not compensated and was not given compensating time off." The appeal is from that judgment.

In her petition for a writ of mandate, Miss Treu alleged that, prior to the time the work was performed, the lieutenant governor had established normal office hours and promised her compensating time off for work beyond those hours. All overtime work was authorized by the lieutenant governor, she said, and she did not receive time off or any other compensation for such work, nor was any offered to or refused by her. According to the petitioner, a payroll claim for the cash equivalent of the accumulated overtime hours at the time of her separation was filed by the lieutenant governor and approved for payment by the State Personnel Board, but the controller refused to issue a warrant.

By their answer, the controller and treasurer denied that any amount was due for overtime. They alleged that Miss Treu was exempt from, and never held a position in, the state civil service. Her salary, they said, was fixed by the lieutenant governor with the approval of the Department of Finance at a monthly rate which was paid in full and no salary or compensation on any other basis, or in any form other than cash, was authorized by the department.

Miss Treu was appointed secretary to the lieutenant governor on March 1, 1947, in which capacity she served for one year.

She then became executive secretary. Her employment was terminated by resignation on August 1, 1949. In both positions she was exempt from civil service. During her employment, her salary, fixed on a monthly basis with the approval of the Department of Finance, progressively increased from $275 to $436 per month.

When Miss Treu commenced her work for the lieutenant governor, he fixed office hours from 9 a. m. to 5 :30 p. m. on week days and from 9 a. m. to noon on Saturdays. At the beginning of her employment, he told her, she testified, ''that there was a terrific amount of work in the office and he knew I was going to work a lot of overtime, and that I was going to be paid for the overtime that I worked.'' She was informed ''that she would be paid for the overtime as it would be impossible for her to take any time off because of the increased amount of work.''

Thereafter, the lieutenant governor wrote to the Department of Finance requesting a salary increase for his staff upon the basis that two employees ''have taken over and are doing the work that a staff of three people performed previous to my administration. Because of their willingness to assume this additional responsibility, I feel they should be compensated accordingly.'' He suggested that the appropriation for his office was sufficient to increase their salaries and stated: ''I do not intend to further add to my staff as long as Mr. Mydland and Miss Treu continue doing the work that has required three people.'' In response to this request, the director of finance approved a salary increase for Miss Treu. All of her salary was paid in full.

Prior to the filing of the claim which is the basis of this proceeding, the Department of Finance had not fixed or approved salary or compensation for Miss Treu on other than a monthly basis, or in amounts different than her agreed monthly salary, nor did it approve compensation in any form other than cash or fix normal working hours for her. An official record was maintained in the lieutenant governor's office showing hours which she worked in addition to normal office hours. All such work was authorized by the lieutenant governor, and she was at no time granted compensating time off for these hours.

Upon her separation from service, a claim for payment for overtime was approved by the State Personnel Board. While the claim was pending in the controller's office, a letter from the attorney general was forwarded to the controller by the

director of finance. The attorney general's letter set forth seven facts upon which it said the validity of the claim would depend. Among these were that the lieutenant governor had established normal hours of work for Miss Treu and that he promised her compensating time off for extra hours worked. The covering letter from the director of finance stated that: "The seven items . . . already have been substantiated, and there is available in our files the required letters and affidavits making the required substantiation." Thereafter, the claim was rejected by the controller and this proceeding was commenced.

Upon this evidence, the trial court found the allegations of the petition to be true. Judgment was entered directing that a peremptory writ of mandate issue commanding the respondents to approve and pay her claim.

In support of their appeal, the respondents contend that the finding that Miss Treu was promised compensating time off for overtime work is not supported by the evidence. In addition, they say, the judgment may not be sustained upon the theory of a contract to pay cash compensation for overtime work because no such contract was approved by the department of finance as required by statute. They argue that, in the absence of either a valid contract or a statutory provision, Miss Treu's monthly salary was payment in full for all of her services during each month, regardless of the number of hours worked. Other objections made by the respondents are that the trial court failed to find upon certain material issues and that other findings are not supported by the evidence. This court is requested to make findings of fact to conform to the proof. A final contention is that, even if Miss Treu is entitled to a cash payment for overtime work, it should be computed upon the basis of her salary at the time the work was performed, rather than her salary at the time of separation.

Miss Treu relies upon *Howard* v. *Lampton*, 87 Cal.App.2d 449 [197 P.2d 69], and *Clark* v. *State Personnel Board*, 56 Cal.App.2d 499 [133 P.2d 11], holding that in the absence of statute, a state employee is entitled to payment upon separation from service for properly authorized overtime work. She also contends that a promise of compensating time off is not a prerequisite to payment for overtime. Even if it is, she says, the promise by the lieutenant governor to pay her for overtime work may be construed as a promise to give her compensating time off. In addition, she disputes each of the other contentions of the respondents.

In *Martin* v. *Henderson* and *Redwine* v. *Henderson*, 40 Cal. 2d 583 [255 P.2d 416], the Howard and Clark decisions were disapproved insofar as they determine that a state employee, in the absence of specific statutory authority, is entitled to payment for accrued overtime upon separation from service. Therefore, the question here is whether there was contractual or statutory authority for payment to Miss Treu for overtime services.

The petition specifically alleges a promise by the lieutenant governor to give Miss Treu "compensating time off for overtime hours worked in addition to her normal hours of work." The court found that the promise was made. However, the letter from the lieutenant governor to the Department of Finance and Miss Treu's own testimony, shows conclusively that she was not promised time off. She was told that "it would be impossible for her to take any time off because of the increased amount of work." The promise made to her was "that she would be paid for the overtime."

The respondents contend that this amounted to a failure of proof within the meaning of section 471 of the Code of Civil Procedure, rather than a mere variance. They rely upon *Gillin* v. *Hopkins*, 28 Cal.App. 579, 580-582 [153 P. 724], which held that evidence of a contract to accept payment in stock constituted failure of proof of a cause of action upon an agreement to pay a designated sum of money. The situation is analogous to that here. Obviously, a promise to grant compensating time off is far different from a promise to pay cash for overtime work. However, " (n)o variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Code Civ. Proc. § 469.)

"The code also provides that the court must, in every stage of an action (and that means on appeal, as well as in the trial of the cause), disregard any error, improper ruling or defect in the pleadings or proceedings, which, in the opinion of the court, does not affect the substantial rights of the parties. It must appear from the record that the error, improper ruling or defect was prejudicial and caused substantial injury before the judgment rendered may be reversed or be held to be affected by it; and it must further appear that a different result would have been probable if such error, ruling or defect had not

occurred or existed. (Code Civ. Proc. § 475.) Not only do these code sections require this court, under such circumstances, to determine from an examination of the entire record, whether or not there has been a miscarriage of justice before reversing a judgment, but the state constitution is equally mandatory and imperative. (Const. § 4½, art. VI.) It therefore indubitably follows that it is not every variance that will necessitate the overthrow of a judgment." (*Murnane* v. *Le Mesnager*, 207 Cal. 485, 495 [279 P. 800].)

It is obvious from a review of the record in this case that the respondents were not misled to their prejudice. They anticipated proof of a contract for payment for overtime work and introduced evidence to show that no such contract had been approved. In addition, the pleading adequately apprised the respondents of the claim which they would be called upon to meet. It alleged that "at the time of said separation from said State employment petitioner herein had accumulated and was entitled to be paid in cash by the State of California for overtime worked while an employee of the said Lieutenant Governor in the total sum of $3,076.53." Construed liberally, as must be done (Code Civ. Proc. § 452), the petition demanded payment for overtime work for which compensation in some form had been promised. Under the circumstances, it cannot be said that the variance is so material as to require a reversal of the judgment. (*Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 382 [240 P.2d 580].)

Although there is no evidence to support the finding that Miss Treu was promised compensating time off for overtime work, the record includes evidence tending to prove an agreement for payment in cash for work beyond normal office hours. However, the respondents argue that the judgment cannot be sustained upon this theory because no such contract was approved by the Department of Finance as required by statute.

Miss Treu was appointed under the authority of section 12101 of the Government Code which provides: "The Lieutenant Governor may appoint and, subject to the approval of the Director of Finance, fix the salaries of one secretary and such clerical assistants as the Lieutenant Governor deems necessary for his office." The salary basis fixed by the lieutenant governor for Miss Treu and approved by the director of finance was one for monthly compensation without any authorization of additional payment for overtime.

Miss Treu contends that no approval by the Department of

Finance is necessary to permit the payment of compensation for overtime. Her position, however, is directly contrary to the express provisions of section 18004 of the Government Code. At the time she commenced her employment, that section read: "Unless the Legislature specifically provides that approval of the Department of Finance is not required, whenever any State agency . . . fixes the salary or compensation of an employee . . . which salary is payable in whole or in part out of State funds, the salary is subject to the approval of the Department of Finance before it becomes effective and payable." The office of lieutenant governor is included within the term "State agency." (Gov. Code, § 11000.)

The words "salary" and "compensation" are, in general usage, interchangeable and are synonymous in most definitions. "Compensation" is "[t]he remuneration or wages given to an employee or, especially, to an officer. Salary, pay, or emolument." (Black's Law Dict., 4th ed., p. 354.) Likewise, "salary" is defined as "a stated compensation, amounting to so much by the year, month, or other fixed period, to be paid to public officers and persons in some private employments, for the performance of official duties or the rendering of services of a particular kind." (Black's Law Dict., 4th ed., p. 1503.) "While the term salary in its original and strict sense signifies a fixed compensation it is frequently used in our constitution and laws as the equivalent of *compensation.*" (*Martin* v. *County of Santa Barbara,* 105 Cal. 208, 212 [38 P. 687].)

From the wording of section 18004 read with reference to related statutory provisions, it is obvious that "salary" and "compensation" are there used as being synonymous. Section 13070 of the Government Code provides that the Department of Finance "has general powers of supervision over all matters concerning the financial and business policies of the State." The purpose of the latter section "is to conserve the financial interests of the state, to prevent improvidence, and to control the expenditure of state money by any of the several departments of the state. (*Ireland* v. *Riley,* 11 Cal.App.2d 70, 72 [52 P.2d 1021].)" (*State* v. *Brotherhood of R. Trainmen,* 37 Cal.2d 412, 422 [232 P.2d 857].) Therefore, a contract fixing rates of pay and working conditions, which has not been approved by the department in accordance with section 18004, is invalid. (*State* v. *Brotherhood of R. Trainmen, supra.*)

■ Any doubt concerning the necessity for the department's approval of contracts for "compensation" and "salary" is dispelled by reference to section 13370 of the Government Code which, at the time Miss Treu was hired, provided: "All contracts entered into by any state agency . . . for services . . . are of no effect unless and until approved by the Department of Finance." Under this section, a contract to pay Miss Treu for her services beyond normal working hours, regardless of whether payment be considered "compensation" or "salary," or both, would be invalid if lacking the approval specified by the statute.

In her petition in this proceeding, Miss Treu did not allege that the Department of Finance had authorized the payment to her of any amount for overtime work. The respondents pleaded in defense of her claim that no such authorization had been made.

■ The evidence concerning the action taken by the Department of Finance shows that while Miss Treu's claim was pending before the controller, several letters were written to the controller regarding it. Although in some of them, a request was made to the controller to withhold payment pending the determination by the department of certain facts, none of them placed the request upon the ground that the department had not given its approval to the working of extra hours. From this correspondence, it might reasonably be inferred that the department tacitly approved the claim except for the specific irregularities mentioned. One letter to the controller referred to an opinion of the attorney general listing the items necessary to establish the validity of the claim. Included in these prerequisites was proof "that the employee was authorized to and did work the extra hours claimed." The department stated to the controller that the authorizations enumerated by the attorney general "have been substantiated, and there is available in our files the required letters and affidavits making the required substantiation." Although the documents received in evidence tend to show that the authorization to which reference was made was only that of the lieutenant governor, they do not compel that conclusion, and it might reasonably be inferred that the department had also approved the arrangement made by him.

On the other hand, there is evidence from which it reasonably could be concluded that the department gave no such approval. Fred W. Links, Assistant Director of Finance and chief of the division of budgets and accounts, was a witness

for Miss Treu. He testified that his division handled her claim. Asked if the Department of Finance approved it, he answered that the function of his division was not to pass upon its validity; "[w]hat we did was merely to report to the State Controller, as we had requested him to withhold the drawing of the warrant for payment thereof until we had substantiated the facts." Asked if the department fixed or approved salary compensation for Miss Treu other than on her regular monthly basis, or if it fixed or provided for compensating time off for overtime hours, he replied that it did not do so. Although this testimony tends strongly to show a lack of approval, it too is not conclusive upon the issue. It may be that Links was speaking of a formal approval; also, there might have been a departmental approval made without his knowledge.

Miss Treu pleaded and tried her case entirely upon a theory of contract but she now contends that no promise of time off was necessary to entitle her to recover. She concedes that section 18005 of the Government Code, authorizing payment upon separation for accumulated overtime, was inapplicable to employees exempt from civil service during the period in question. However, she refers to Government Code, sections 18023 and 18024, and rule 133 of the Personnel Board which provide for the adoption of rules governing hours of work and the granting of time off in lieu of cash compensation for overtime. But she does. not claim, nor does the record indicate, that she was within those statutory or regulatory provisions or that any statute entitled her to payment for overtime. Instead, she argues that no statutory authority is essential to permit her recovery. This point has been decided adversely to her in *Martin* v. *Henderson, supra.*

In the absence of either a valid contract or statute, there is no basis for a recovery by Miss Treu. Her monthly salary was payment in full for all of her services, without regard to the number of hours which she worked. (*Martin* v. *Henderson, supra*; *Jarvis* v. *Henderson*, 40 Cal.2d 600 [255 P.2d 426]; *Robinson* v. *Dunn*, 77 Cal. 473 [19 P. 878, 11 Am.St.Rep. 297].)

In summary, from the evidence presented, conflicting inferences could be drawn as to whether or not the Department of Finance has approved Miss Treu's claim. The issue is essential to a determination of this proceeding. It should

have been alleged in the petition for mandate and determined by the findings. (*Cf. Delany* v. *Toomey,* 111 Cal.App.2d 570, 571-573 [245 P.2d 26].) However, no such finding was made. The trial court found that all of the allegations of the petition are true. But Miss Treu did not charge that her claim was for overtime approved by the department. The answer asserted, by way of defense, that there was no such approval, and the allegations in each paragraph of the answer were found to be untrue only "so far as they deny the allegations in" the particular paragraph of the petition being answered.

The situation then is that the issue as to approval by the department of finance, fully pleaded in the respondent's answer, was not considered by Miss Treu or the trial judge to be the determinative factor basic to any recovery. Her position, undoubtedly taken in reliance upon the Clark and Howard decisions, which since have been disapproved, was that authorization by the Department of Finance was not a prerequisite. In her brief she says: "The court is reminded that there was no legal requirement for the Department of Finance to approve the working hours of petitioner or the approving of compensation for overtime."

The memorandum opinion of the trial judge clearly shows that he did not believe that a promise to pay an employee additional compensation for extra time must be approved by the Department of Finance to make the state liable for the payment of it. As he construed section 18004 of the Government Code, it requires approval by the Department of Finance only of salary. "It is true," he said "that the statute states 'salary or compensation' but later each one of the clauses refers only to the word 'salary'. This court does not feel that that statute is subject to the broad interpretation which respondent puts upon it. We are of the opinion that the words 'salary or compensation' are used as interchangeable terms, but that a lump sum to be paid in lieu of compensating time off is not such 'compensation' as is meant there." Undoubtedly, that construction of the statute is the reason why no finding as to the approval by the department was made.

■ Although an appellate court is empowered to make findings of fact and to take evidence in support of a judgment (Code Civ. Proc., § 956a), generally it will not do so when the evidence before the trial court is conflicting. (*People* v. *One 1949 Ford V-8 Coupé,* 41 Cal.2d 123, 127 [257 P.2d

641].) This latter rule is not without exception (*cf. Johndrow* v. *Thomas,* 31 Cal.2d 202, 207 [187 P.2d 681] ; *Gudger* v. *Manton,* 21 Cal.2d 537, 547 [134 P.2d 217]), but where, as in the present case, the evidence in favor of one party is not clearly persuasive, and there is no indication as to the trial judge's appraisal of the evidence, the judgment should be reversed for a new trial in order that there may be a finding upon the issue.

The judgment is reversed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The judicial history of this case should be of interest to the public as well as to practicing attorneys. Miss Treu filed a petition for a writ of mandate to compel payment to her by the controller and treasurer of the State of California of compensation for overtime promised her by her employer, Lieutenant Governor Knight, now Governor of the state. Her petition was granted by the trial court and affirmed by the District Court of Appeal. ((Cal.App.) 240 P.2d 32.) This court granted the state's petition for hearing and rendered its first decision on April 3, 1953. That decision, which reversed the trial court, held that the contract entered into between Miss Treu and her employer was invalid for lack of approval by the Department of Finance. Mr. Justice Schauer and I filed separate dissenting opinions. On May 1, 1953, this court granted a rehearing with Chief Justice Gibson, Justices Shenk, Schauer and me voting therefor.

The present opinion holds, in accordance with my former dissent, that the evidence presented is sufficient to show a tacit or implied approval by the department of finance of the contract entered into between Miss Treu and her employer, the then lieutenant governor. In direct conflict with the former opinion, it is now held by a majority of this court that "conflicting inferences could be drawn as to whether or not the Department of Finance has approved Miss Treu's claim. The issue is essential to a determination of this proceeding." In the former opinion, the majority did not even recognize that there was any evidence tending to show an approval by the department. The record is the same now as it was then. However, the majority now reverse on the ground that the trial court made no finding as to departmental approval or lack thereof. With this I cannot agree.

Florenz Treu, petitioner below, was a former employee of the former lieutenant governor. She was appointed secretary on March 1st, 1947, and served in that position until March 1st, 1948, when she was appointed to the position of executive secretary. On August 1st, 1949, she terminated her employment with the lieutenant governor. She was exempt, during her tenure in both positions, from civil service and its requirements. After the termination of her employment, she brought mandate proceedings in the Superior Court of Sacramento County against the state controller and state treasurer to compel them to allow a claim filed by her against the state in the sum of $3,076.53. This sum represented the cash value of compensating time off which she alleged had been promised her for overtime worked while she was employed by the lieutenant governor but which had not been received by her prior to her separation. The state appeals from a judgment directing that the claim be paid.

Section 12101 of the Government Code provides that "The Lieutenant Governor may appoint and, subject to the approval of the Director of Finance, fix the salaries of one secretary and such clerical assistants as the Lieutenant Governor deems necessary for his office." During the time Miss Treu worked for the lieutenant governor, her salary was fixed with the approval of the Department of Finance on a monthly basis in amounts which progressively increased from $275 per month to $436 per month. This salary has all been paid. Regular hours of work were established by the lieutenant governor as follows: 9 a. m. to 5:30 p. m., Mondays through Fridays, and 9 a. m. to 12 noon on Saturdays. Miss Treu kept a record showing the extra hours she worked and these were recorded on the monthly attendance report forms. The extra hours were authorized to be worked by the lieutenant governor and were supported by Authorization for Overtime Form 682. After separation from her employment without having been paid for the overtime work and without having received compensating time off, Miss Treu prepared a claim for payment which was approved by the State Personnel Board and, when later presented to the state controller was by him rejected. Thereafter these proceedings were commenced.

The state first contends that the finding of the trial court that Miss Treu was promised compensating time off for overtime work is not supported by the evidence. It is argued that the promise made to Miss Treu was not for com-

pensating time off but for a cash payment in lieu thereof. This argument has merit. The record shows that Miss Treu was told by the lieutenant governor that due to the pressure of work it would be impossible for her to take time off but that she would be paid for her overtime work. This testimony was substantiated by a letter from the lieutenant governor to the Department of Finance. The state contends that this constitutes a failure of proof and cites, as authority, *Gillin* v. *Hopkins*, 28 Cal.App. 579 [153 P. 724], wherein it was held that evidence of a contract to accept payment in stock constituted failure of proof of a cause of action upon an agreement to pay a designated sum of money. It is provided, however, in section 469 of the Code of Civil Procedure, that no variance between the allegation in a pleading and the proof is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense on the merits. Miss Treu's petition alleged that she was entitled to be paid in cash for overtime work and the state could not have been misled inasmuch as it introduced evidence tending to prove that no contract made with Miss Treu for payment for overtime work had been approved by the Department of Finance. We said in *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 382 [240 P.2d 580], that "[a] variance between the allegations of a pleading and the proof will not be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense on the merits, and a variation may be disregarded where the action has been as fully and fairly tried on the merits as though the variance had not existed." And in *Chelini* v. *Nieri*, 32 Cal.2d 480, 486 [196 P.2d 915], we said: "that a variance is immaterial and may be disregarded where the case was as fully and fairly tried upon the merits as though the variance had not existed." In view of the pleading heretofore referred to and the proof adduced by both parties, it is at once apparent that the state was not misled to its prejudice. Further, the evidence is more than sufficient to show that Miss Treu was promised compensation for overtime work by the lieutenant governor.

The state argues, however, that no such contract is valid unless approved by the Department of Finance as required by the provisions of section 18004 of the Government Code (as the section read at the time she began work). That section provides that "Unless the Legislature specifically pro-

vides that approval of the Department of Finance is not required, whenever any State agency [in which the office of Lieutenant Governor is included, Gov. Code, § 11000] . . . fixes the salary or compensation of an employee . . . which salary is payable in whole or in part out of State funds, the salary is subject to the approval of the Department of Finance before it becomes effective and payable."

It may be taken for granted that the words "salary" and "compensation" are synonymous for the purpose of this discussion. (*Martin* v. *County of Santa Barbara*, 105 Cal. 208, 212 [38 P. 687].)

In *State* v. *Brotherhood of R. Trainmen*, 37 Cal.2d 412, 421, 422 [232 P.2d 857], it was held that a state agency could not bind the state for wages or salary without the approval of the Department of Finance. The question of approval by the Department of Finance was the subject of conflicting evidence. In support of the determination reached by the trier of fact that Miss Treu was entitled to compensation for overtime, the record contains a letter from the state attorney general to the Department of Finance in which he set forth seven facts upon which he felt the validity of Miss Treu's claim rested. He wrote "[w]hether or not the claim is valid under the rule of that case [*Clark* v. *State Personnel Board*, 56 Cal.App.2d 499 (133 P.2d 11)] is dependent, in addition to the facts shown above, upon the existence of the following facts: (1) that the lieutenant governor did establish normal hours of work for the employee; (2) that he did promise the employee compensating time off for extra hours worked; (3) that this promise was made prior to the time they were worked; (4) that the employee was authorized to and did work the extra hours claimed; (5) that she did not receive compensating time off or other compensation for these extra hours; (6) that she did not waive the overtime by failing to take compensating time off when offered, and finally (7) that the amount claimed is the cash equivalent of the uncompensated overtime." On February 14, 1950, the letter of the attorney general was forwarded to the controller together with an interdepartmental communication signed by James Dean, director of finance, in which he referred to the attorney general's letter stating that the "seven items which he set forth in his letter already have been substantiated, and there is available in our files the required letters and affidavits making the required substantiation." It is argued that these communications constituted a tacit approval by the department of Miss Treu's claim for pay-

ment for overtime. The statute (Gov. Code, § 18004) provides that the required approval by the department must only be had before the compensation promised "becomes effective and payable" and does not provide that the approval must be had in advance of the time worked for which compensation is promised. Mr. Links, assistant director of finance, in response to a question as to whether the department had approved the claim, testified that "[w]hat we did was merely to report to the State Controller, as we had requested him to withhold the drawing of the warrant for the payment thereof until we had substantiated the facts." Thereafter, on February 14th, as has been hereinbefore set forth, a letter was written by the department to the controller in which it was stated *"there is available in our files the required letters and affidavits making the required substantiation."* I am satisfied that it can be inferred from this evidence that the conduct of the Department of Finance amounted to an approval of the agreement for overtime pay between Miss Treu and the lieutenant governor.

The state relies upon section 13370 of the Government Code in support of its contention that "All contracts entered into by any state agency . . . for services shall not be effective unless and until approved by the Department of Finance." This section adds nothing to the discussion heretofore had. As has been seen, the department impliedly approved Miss Treu's claim for overtime compensation and the trial court so found. In this regard it should be noted that Miss Treu alleged in Paragraph XII all the facts necessary to show that the Department of Finance approved her claim. She alleged "That on the 14th day of February, 1950, the said James S. Dean informed the respondent, Thomas H. Kuchel, that certain facts necessary to be established to make said claim valid had been substantiated and that there was available in the files of said James S. Dean the required letters and affidavits making the required substantiation. The facts so substantiated and established are:

"1. That the said Lieutenant Governor did establish normal hours of work for petitioner;

"2. That said Lieutenant Governor did promise petitioner compensating time off for extra hours worked;

"3. That said promise was made prior to the time said hours were worked;

"4. That petitioner was authorized to and did work the extra hours claimed;

"5. That petitioner did not receive compensating time off or other compensation for said extra hours prior to said date of separation;

"6. That petitioner did not waive the extra hours claimed by failure to take compensating time off for said hours when offered;

"7. The amount claimed is the cash equivalent of the uncompensated overtime."

In addition, all the substantiating facts are alleged. The trial court found the allegations of this paragraph to be true and, in addition, found that the allegations of the answer denying the same were untrue. These findings are sufficient to establish the implied approval of the department. In holding that this is not a sufficient finding on the issue of approval by the department of finance, a majority of this court is, by a highly technical and wholly unnecessary construction thereof, depriving a working person of wages earned for work done honestly, and conscientiously in reliance upon the promise of one of the highest officers of this state. It is at once apparent from a reading of the reporter's transcript as it relates the testimony of Mr. Links, Assistant Director of Finance, on direct and cross-examination, that the case was tried on the theory that approval by the Department of Finance was at issue.

It is next argued that where a public employee has a fixed monthly salary there can be no such thing as "extra" hours, or days, as a basis for overtime pay, and that Miss Treu's monthly salary was the only compensation to which she was entitled. *Robinson* v. *Dunn*, 77 Cal. 473 [19 P. 878, 11 Am. St.Rep. 297], is relied upon in support of this contention. In the Robinson case, the Legislature sought to authorize additional payment for certain employees whose wages were fixed by law at $4.00 per day because these employees were obliged to work 16 hours per day rather than the hours comprising a normal working day. It was there held that the word "day" "as used in the statute, covers whatever period of the twenty-four hours the legislators choose to remain in session. . . . The services, therefore, were not 'extra,' but were such as the employees were bound to render." The situation in the Robinson case is not analogous to the one under consideration. In the instant case, Miss Treu was ordered to work overtime and promised additional compensation therefor. The state's argument that "[t]he length of the work day and of the work week having been in the discretion of the appointing power, the

work month for which he was paid covers whatever part of the month that the appointing power required him to work'' and ''[t]he long hours, therefore, which petitioner here claims she worked were not 'extra,' but were such as she was bound to render for her fixed monthly salary'' shows that the present situation differs from that of the Robinson case. The overtime hours worked by Miss Treu were, in effect, such as would be worked by an *extra employee* since the appointing power—the lieutenant governor—promised her that she would receive extra compensation for that overtime work in addition to her fixed regular hours of work. The rule announced in *Howard* v. *Lampton,* 87 Cal.App.2d 449 [197 P.2d 69], and *Clark* v. *State Personnel Board,* 56 Cal.App.2d 499 [133 P.2d 11], now disapproved by the majority opinions in *Martin* v. *Henderson* and *Redwine* v. *Henderson* (40 Cal.2d 583 [255 P.2d 416]) was in full force and effect during the time Miss Treu worked for the lieutenant governor and during the time this case has been under judicial review. The disapproval of the rule that a state employee, in the absence of statutory authority, is entitled to payment for accrued overtime upon separation from service, should not be permitted to operate retroactively so as to deprive Miss Treu of a vested right. In *Hildebrand* v. *State Bar,* 36 Cal.2d 504, 514 [225 P.2d 508], this court said: ''. . . it is our conclusion that the ends of justice will be served by dismissing the present proceeding without disciplinary action, thereby permitting this opinion, as the first expression of the views of this court upon the subject to serve prospectively as a guide to the members of the profession generally, rather than to serve retrospectively to the detriment of petitioners.'' A note in 85 American Law Reports 262 points out that the general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision was bad law, but that it never was the law. It is also noted, however, that to this the courts have established the exception that, where a constitutional or statute law has received a given construction by the courts of last resort, and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated nor vested rights acquired under them impaired by a change of construction made by a subsequent decision. ''The true rule in such cases is held to be to give a change of judicial construction in respect to a statute the same effect in its operation on

contracts and existing contract rights that would be given to a legislative repeal or amendment; that is to say, *make it prospective, but not retroactive.''* (Emphasis added.) (See, also, *People* v. *Maughs,* 149 Cal. 253 [86 P. 187]; *People* v. *Ryan,* 152 Cal. 364 [92 P. 853].) Good faith and fair dealing by state officers should not only be presumed, but enforced. To hold that the disapproval of the cited cases operates retroactively deprives Miss Treu of compensation for services rendered in good faith in reliance upon not only the promise of her employer (which was impliedly approved by the Department of Finance) who held one of the highest offices in this state, but in reliance upon decisions rendered by the highest judicial tribunals of this state. Neither Miss Treu, her attorney, nor the trial court or the District Court of Appeal *could* have known that *Howard* v. *Lampton, supra,* and *Clark* v. *State Personnel Board, supra,* were to be disapproved in *Martin* v. *Henderson* and *Redwine* v. *Henderson, supra.* If this case was tried on the theory of the rule laid down in those cases, this court should not now penalize Miss Treu for having done so but should construe the pleadings and the findings liberally to the end that justice would be accomplished.

The final contention made by the state is that Miss Treu was paid in full for all overtime by a special salary adjustment granted her with the approval of the Department of Finance. On July 16, 1947, the lieutenant governor wrote to Mr. Links of the Department of Finance that the ''salaries'' of his employees should be increased to certain specified amounts for the year. The trial court found that Miss Treu did not receive compensation for the overtime hours worked. There is ample evidence in the record in support of that finding and the implication is clear that the fixed salary received by Miss Treu was to cover her fixed hours of work in view of the express promise of her employer, the lieutenant governor, to compensate her for overtime worked.

Other points raised by the state do not merit discussion inasmuch as there are really only two primary issues involved —whether or not the lieutenant governor and Miss Treu entered into a contract for the payment to her of extra compensation for overtime work and whether or not that contract was approved by the Department of Finance. On both of these issues, the trial court found in her favor and there is ample evidence in support thereof.

For the foregoing reasons, I feel compelled to say that the present majority holding in this case results in a totally

unnecessary miscarriage of justice and does nothing to promote respect for the fair dealing of a prominent state official who has been prevented from keeping his word which was given in sincerity and honesty in return for work conscientiously done.

I would affirm the judgment.

SHENK, J., and SCHAUER, J., Dissenting.—In our view the evidence adequately supports the essential findings and such findings, construed favorable to the judgment (see *Richter* v. *Walker* (1951), 36 Cal.2d 634, 640 [226 P.2d 593]), are sufficient to sustain it. Accordingly we would affirm the judgment.