[Civ. No. 2689. Fifth Dist. Nov. 4, 1976.]

SEGUNDO GAI et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF THE CITY OF FRESNO,
Defendant and Respondent.

## COUNSEL

Fullerton, Lang, Richert & Patch, William T. Richert and Jeff Wall for Plaintiffs and Appellants.

Spencer Thomas, Jr., City Attorney, James A. McKelvey, Chief Assistant City Attorney, Norton O. Nishioka, Arthur J. Saalfield, Wayne N. Witchez, Assistant City Attorneys, A. H. Einbinder and Jose M. Alvarez, Deputy City Attorneys, for Defendant and Respondent.

## Opinion

## FRANSON, J.—

### Statement of the Case

On May 14, 1974, appellants, pipefitters and refrigeration fitters employed by the City of Fresno, filed a petition for writ of mandamus to compel the Fresno City Council to adopt a salary resolution amendment which would give them a 50-cent per hour wage increase retroactive to July 1, 1973, and would result in appellants receiving a rate of pay not less than the prevailing wage rate in private employment within the City of Fresno as required by section 809 of the city charter. Appellants sought payment of the wage increase retroactively with interest.

Respondent answered the petition alleging that the rate of pay certified by the civil service board on August 8, 1973, for pipefitters and refrigeration fitters for the fiscal year 1973-1974, was $8.23 per hour which did not include the 50-cent per hour pay increase; that under the provisions of section 809 of the city charter, respondent was required to fix the rate of pay certified by the civil service board as compensation for persons engaged in city employment as of July 1 of each year; and that respondent duly adopted for appellants the $8.23 per hour wage rate on August 16, 1973.

The trial court found that under the Fresno City Charter and Municipal Code the rates of pay of city employees is to be determined on the basis of rates of pay actually in effect and paid in private industry on July 1st of the ensuing fiscal year; that because the 50-cent per hour wage increase was not being paid to private employees in the City of Fresno on July 1, 1973, that respondent thereafter was powerless to grant appellants the wage increase retroactive to July 1, 1973. Findings of fact, conclusions of law and a judgment denying the writ of mandate were entered. Appellants filed a timely appeal.

### Statement of the Facts

On July 1, 1971, collective bargaining agreements between private employers and craft unions in the Fresno area were executed providing that the rate of pay for pipefitters and refrigeration fitters would be increased 82 cents per hour effective July 1, 1973.

The increase did not take effect on that date, however, because in 1971 the federal government, through the Construction Industry Stabilization Committee (CISC), had asserted its jurisdiction to review wage increases through craft dispute boards composed of labor and management representatives.[1] The rate of pay actually being paid to pipefitters and refrigeration fitters in the Fresno area on July 1, 1973, was $8.23 per hour. On August 8, 1973, the civil service board certified to respondent the $8.23 per hour as the rate being paid to pipefitters and refrigeration fitters in private employment. On August 16, 1973, respondent city council adopted the $8.23 per hour rate for appellants effective July 1, 1973.

On October 4, 1973, the CISC approved a 50-cent per hour pay increase for the crafts involved, retroactive to July 1, 1973. Private employees in these crafts in the City of Fresno thereupon received the increase in pay retroactive to July 1, 1973.

On December 19, 1973, the civil service board voted that respondent should recognize the increase permitted by CISC. Thereafter, respondent found that the civil service board's action was a certification of a rate of pay for the affected employees for the 1973-1974 budget year and resolved to grant the increase to appellants. However, the city attorney recommended that respondent not adopt the salary resolution because "it had no authority to do so." As a consequence, the retroactive pay rate increase was rejected by respondent.[2]

## DISCUSSION

The question to be resolved is whether respondent was obligated under the Fresno City Charter and Municipal Code to adopt retroactively for the 1973-1974 fiscal year a salary resolution allowing a 50-cent per hour wage increase that would put appellants in parity with comparable workers in private industry. For the reasons hereafter expressed we hold that respondent was required to adopt the salary amendment.

---

[1] On March 29, 1971, Executive Order No. 11588 was issued creating a tripartite Construction Industry Stabilization Committee to review collective bargaining agreements negotiated in the construction industry. The application for approval of the wage increase to the pipefitters and refrigeration fitters under the collective bargaining agreements here involved was still pending on July 1, 1973.

[2] Respondent, however, adopted a salary ordinance giving appellants a 50-cent per hour pay increase to $8.73 per hour effective July 1, 1974.

Section 809 of the Charter of the City of Fresno provides in relevant part:

". . . [C]ity employees shall not be paid less than the prevailing wage paid in private employment in the City of Fresno in the job or position in which said employees work. . . .

"Notwithstanding any of the other provisions of this Charter, whenever any . . . crafts establish a rate of pay for such . . . crafts through collective bargaining agreements with employees . . . and such rate is recognized and paid throughout the industry and the establishments employing such . . . crafts in the City of Fresno and the Civil Service Board shall certify that such rate is generally prevailing for such . . . crafts in private employment in the City of Fresno pursuant to collective bargaining agreements, the Council shall have the power and it shall be its duty to fix such rate of pay as the compensations for such . . . crafts engaged in the city service. The rate of pay so fixed by the Council shall be determined on the basis of rates of pay effective as of July 1 of the new budget year in such . . . crafts, provided, however, if such rates . . . for any . . . craft shall be revised in collective bargaining agreements executed between July 1 and July 31 establishing rates of pay, then such revision shall be used in determining the . . . rates of pay for said . . . crafts and the rates of pay so determined shall be made retroactive from July 1 of the new budget year."

Section 809 of the charter is implemented by section 2-1520 of the Municipal Code of the City of Fresno. That section provides as follows:

"(a) Between January 1 and April 30 of each year the [civil service] board shall conduct such hearing or hearings as it shall deem necessary to determine, under and pursuant to the second paragraph of section 809 of the charter, (1) the rates of pay generally prevailing for groups and crafts in private employment in the city pursuant to collective bargaining agreements, and (2) the groups and crafts engaged in the city service to which such rate shall apply, effective on the July 1st following, for the ensuing fiscal year. *The rates of pay so determined shall be those to be effective pursuant to collective bargaining agreements as of the July 1st following, to the extent then established by such agreements, otherwise such rate shall be those in effect at the time of such determination. The board shall certify to the council, on or before the first Thursday in May, of each year, the rates of pay so determined.*"

"(b) The board shall review, as of August 1 of each year,'the rates of pay certified pursuant to subsection (a) and shall certify to the council on or before the second Thursday in August, any modification in such rate effected by rate revisions in collective bargaining agreements executed at any time before July 31."[3]

"(c) The rate of pay fixed by the council annually pursuant to the second paragraph of section 809 of the charter for groups and crafts engaged in the city service shall be determined on the basis of rates of pay certified by the board pursuant to subsection (a) and such rates shall be effective on July 1 for the ensuing budget year; provided, however, that such rates of pay so fixed shall be revised in accordance with any certification of the board pursuant to subsection (b), and such revised rates of pay shall be made retroactive from July 1 of the new budget year." (Italics added.)

The trial court's holding that respondent was powerless to retroactively increase appellants' rate of pay for the 1973-1974 fiscal year ignores the clear mandate of section 809 of the charter which provides that when a rate of pay is established and paid in private industry and then is certified by the civil service board, "the council *shall* have the power and it *shall* be its duty to fix such rate of pay as the compensation for such groups or crafts engaged in the city service." (Italics added.)

■ "Shall" as used in charter provisions pertaining to the fixing of compensation in accord with the prevailing wages paid in private industry has a compulsory and mandatory meaning. (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 634 [12 Cal.Rptr. 671, 361 P.2d 247].) Moreover, city charters pertaining to municipal affairs supersede all laws inconsistent therewith. "Within its scope, such a charter is to a city what the state Constitution is to the state." (*Campen* v. *Greiner* (1971) 15 Cal.App.3d 836, 840 [93 Cal.Rptr. 525]; see also *Currieri* v. *City of Roseville* (1970) 4 Cal.App.3d 997, 1001 [84 Cal.Rptr. 615].) Thus, any conflict between the provisions of section 809 of the city charter and section 2-1520 of the municipal code must be resolved in favor of the charter.

We conclude, however, that there are no irreconcilable conflicts between the provisions of the code and the charter and that the

---

[3]This subparagraph is inapplicable in the present case because there were no rate revisions in the collective bargaining agreements before July 31, 1973.

provisions readily can be harmonized to carry out the public policy of providing appellants the same wage rate received by comparable employees in private industry. In our interpretative task we are mindful of the principle that a prevailing wage statute should be liberally construed in favor of the public employee and that the public employer has no discretion or right to pay these employees less than the prevailing wage referred to in the charter provision. (*Goodrich* v. *City of Fresno* (1946) 74 Cal.App.2d 31, 36 [167 P.2d 784].)

We first observe that the civil service board did not comply with the provisions of municipal code section 2-1520. Under that section the board was required to determine before April 30 and to certify to the council by the first Thursday in May, the rates of pay generally prevailing for pipefitters and refrigeration fitters in private employment in the City of Fresno "effective on the July 1st following, . . . pursuant to collective bargaining agreements." Under the collective bargaining agreements this, of course, was to be $9.05 per hour ($8.23 per hour existing wage plus the 82-cent increase effective July 1).

■ Respondent argues that because the wage increase had been suspended pending CISC approval, that the board could not have found the wage rate "effective on the July 1st following" to be anything other than $8.23 per hour. It contends that the word "effective" means "in actual force or operation." (See *Carlton* v. *Castranova* (1961) 189 Cal.App.2d 409, 414 [11 Cal.Rptr. 258]; Webster's Internat. Dict. (2d ed.) p. 819.)

The fallacy in respondent's argument, however, is that because of the federal suspension of the wage increase, it was impossible for the board to ascertain with any degree of certainty by the first Thursday in May what the actual wage rate in private industry would be on July 1st; there simply was no way for the board to know whether CISC approval would be forthcoming by July 1st.[4]

[4]If CISC had approved the wage increase before July 1 and after the board had certified to the council the existing $8.23 per hour rate, under the literal wording of the charter and code, the board would have been powerless to certify the increase. As noted, section 2-105, subdivision b, authorizes the civil service board to review rates of pay previously certified to the council only where the rate is modified in collective bargaining agreements executed before July 31st. In such a situation, however, we believe that the board necessarily would be deemed to have the implied authority to certify the increase in order to carry out the wage parity policy of the charter.

Unlike the usual situation where the board is able to predict with reasonable certainty what the actual wage rate would be on the ensuing July 1, in the present case the board necessarily had to conjecture as to what the rate would be. The question, therefore, arises: should the board have presupposed in favor of or against the increase? The answer is self-evident—to carry out the wage parity policy of the charter, section 2-1520 of the code must be construed to require the board to anticipate CISC approval of the increase by July 1, or if approval is not obtained by that date, at least to anticipate that any subsequent approval might be made retroactive to July 1, as actually happened. Thus, the board should have certified the $9.05 per hour as the rate to be effective July 1, 1973.

If the board had certified the increased rate as the rate to be effective July 1, respondent could have fixed that rate for appellants, suspending payment of the increase, however, until CISC approval was obtained. This would have allowed appellants the $9.05 per hour rate if approval were obtained by July 1, and, if approval were not obtained by that date, appellants would have received $8.23 per hour until such time as approval was obtained. This procedure also would have enabled respondent to budget for the forthcoming wage increase before June 30th as required by charter section 1205 and would have enabled respondent to know exactly how much tax to levy for appellants' salaries as required by charter section 1207.

Because the board could have certified the increased rate before the commencement of the 1973-1974 fiscal year, thereby enabling the respondent to fix that amount as the prevailing wage effective July 1, subject only to CISC approval, we find no reason in logic or public policy why, after the 50-cent per hour increase retroactive to July 1 was approved in October 1973, the board and respondent could not have certified and fixed a similar increase for appellants. Manifestly, at that point in time, the wage rate for private employees "effective as of July 1 of the new budget year" had become fixed at $8.73 per hour.

In the final analysis, the real question is whether by reason of some law outside the charter and code respondent is prohibited from awarding a retroactive wage increase. Respondent contends that California Constitution, article XI, section 10, proscribes the payment of such a wage increase. That section provides in relevant portion, "A local government body may not grant extra compensation or extra allowance to a . . . public employee . . . after service has been rendered or a contract has been entered into and performed in whole or in part . . . ." However,

as stated in *San Joaquin County Employees' Assn., Inc.* v. *County of San Joaquin* (1974) 39 Cal.App.3d 83 at page 88 [113 Cal.Rptr. 912]: "On the issue of whether retroactive pay raises are unconstitutional per se, there is a paucity of case law but the subject has been the focal point of several Attorney General opinions. These opinions were not rendered as esoteric discussions of legal philosophies. Rather they were answers given to inquiring governmental agencies confronted with the day-to-day operation of government and are therefore to be given weight as being contemporaneous administrative interpretations. [Citations.] These opinions . . . hold that the granting of retroactive pay raises under the circumstances recited therein did not constitute a violation . . . of the California Constitution. The Attorney General opinions rely upon the fact that in each instance the adjusted salary rates were made retroactive to a date at which the salary rates were indefinite and subject to future determination."

In the present case, the wage increase actually owing to appellants on July 1, 1973, was indefinite because it was subject to approval by CISC; hence, there was no constitutional proscription to authorizing retroactive payment of the increase after approval had been received.

In *Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, involving substantially similar charter and ordinance provisions to this case, the Supreme Court upheld a retroactive pay increase against constitutional challenge because the appellants were seeking to have their compensation legally fixed in the manner in which the charter provided as opposed to seeking compensation in addition to that which had been legally provided. (55 Cal.2d at pp. 640-641.)

In testing the constitutionality of a retroactive pay raise we must ask whether the money is granted for something beyond what the employee is entitled to receive for the work he has performed. Because appellants were entitled under the collective bargaining agreements to receive an 82-cent per hour increase as of July 1, 1973, subject only to modification and approval by CISC, the 50-cent per hour increase cannot be considered a mere gratuity. (See *Weston* v. *State* (1933) 262 N.Y. 46 [186 N.E. 197, 200, 88 A.L.R. 1219].)

Respondent's reliance on *Alameda County Employees' Assn.* v. *County of Alameda* (1973) 30 Cal.App.3d 518 [106 Cal.Rptr. 441], is misplaced.

That case involved a situation where the wage rate in private employment, with which the county employees were guaranteed parity by the charter, was difficult of ascertainment in light of a practice involving noncounty employees whereunder wage adjustments occurred after six months of the fiscal year had passed. The board adopted a salary ordinance which set salaries for various employee classifications effective with the beginning of the fiscal year and provided a percentage increase for certain classifications of employees effective for the second half of the year. The reviewing court merely held that the board's action was within its discretion because it was impossible to determine what the wage increase for private employees would be during the ensuing fiscal year.

Respondent's reliance on *Butler* v. *City & County of San Francisco* (1951) 104 Cal.App.2d 126 [231 P.2d 75], also is misplaced. There, the rate of pay certified to the board of supervisors for the City and County of San Francisco for the public employees was a rate actually in effect on July 1, 1948, for the comparable workers in private industry. Negotiations were proceeding at that time for a pay increase in private industry that was later granted and made retroactive to July 1. The lower court's writ of mandate directing the board of supervisors to pay the same retroactive increase to the petitioning public employees was reversed on appeal.

In the present case, as contrasted with *Butler, supra,* the pay increase to be effective on July 1, 1973, already had been negotiated by collective bargaining agreements and was subject only to approval by the federal government. Once that approval was forthcoming, under the charter respondent was required to fix appellants' wages in accordance with those paid to private employees.

Because the board and city council failed to follow the procedures authorized by the charter and code to insure appellants of their right to comparable wages with private employees which resulted in appellants receiving less than their counterparts in private industry for the 1973-1974 fiscal year, a writ of mandate should be granted. (See *Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252, 261-262 [90 Cal.Rptr. 169, 475 P.2d 201]; *Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 639.)

The judgment denying the writ of mandate is reversed; the matter is remanded to the trial court with directions to issue a writ of mandate to

respondent city council ordering it to grant appellants the 50-cent per hour wage increase for the 1973-1974 fiscal year with interest from July 1, 1973.

Gargano, Acting P. J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.