[No. H005859. Sixth Dist. Oct. 31, 1991.]

HELEN SEYMOUR, Plaintiff and Appellant, v.
RICHARD CHRISTIANSEN et al., Defendants and Appellants.

COUNSEL

Hoge, Fenton, Jones & Appel and James E. Towery for Defendants and Appellants.

Burnett, Burnett & Allen and Douglas B. Allen for Plaintiff and Appellant.

OPINION

ELIA, J.—Plaintiff is a retired public school employee; defendants are the school district for which she worked, the district superintendent, and the school board. Defendants appeal from a summary judgment in plaintiff's favor to the extent that it awards plaintiff a lump sum for vacation she earned but did not use during her employment. We conclude that a lump sum payment to plaintiff for vacation earned, except that earned in the months actually worked during the last year, violates state constitutional prohibitions against extra compensation for public employees. (Cal. Const., art. IV, § 17; art. XI, § 10.) Therefore, we reverse that portion of the summary judgment.

Plaintiff cross-appeals from an earlier order sustaining the individual defendants' demurrer without leave to amend as to one cause of action. We conclude that the trial court abused its discretion by denying leave to amend.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Located in the rural Santa Cruz Mountains in Santa Clara County, the Lakeside Joint School District consists of one elementary school. In Novem-

ber 1965, plaintiff Helen Seymour began working part time for the district. The following summer, she became a full-time, year-round employee. She continued in that capacity until her retirement in March 1986.

As the district's sole secretary, plaintiff performed general secretarial functions as well as "preparing the school's payroll, taking minutes at Board meetings . . . , ordering and purchasing all school and office supplies, instructional materials and equipment, preparing the budget and all fiscal reports, maintaining attendance, milk and other school reports, issuing warrants, and acting as school librarian. In addition to my regular duties, I also coordinated school functions, supervised school repairs, performed nursing, gardening, carpooling, laundering and janitorial services when needed, and was responsible for opening and closing the school for Board meetings, public meetings and after-school events." Plaintiff assisted the sole administrator of the school, Frederick Knipe, who served as principal and superintendent and also taught three grades.

In what the parties report to have been a bitter battle, the district elected a new school board in the fall of 1985. The new board ousted Knipe in March 1986, precipitating plaintiff's decision to retire. In conjunction with her retirement, plaintiff made several demands upon the district through the new superintendent, Dr. Hal Kelban. Unsuccessful, plaintiff obtained counsel.

In a November 1986 letter to Kelban, counsel outlined plaintiff's claims as follows: (1) She sought reimbursement of personal funds advanced for repair of district pianos. (2) She demanded that the district either submit verification of unused sick leave to the Public Employees Retirement System or compensate her for those days. (3) She demanded that the district compensate her for unused vacation time, claiming she had not used a vacation day in 21 years. (4) She sought an additional 30 days' compensation under Labor Code sections 202 and 203 as a penalty for the district's failure to pay her past wages within 72 hours after her termination. (5) She sought interest and attorney fees.

When the district failed to meet most of plaintiff's demands, she brought this action in April 1987 against the district, Kelban, and the members of the school board, in their individual and official capacities. In her third amended complaint, plaintiff asserted two causes of action for breach of contract and implied contract, seeking compensation for 21 years' unused vacation time; one cause of action for breach of implied contract and for benefits conferred, seeking reimbursement of personal funds paid for piano repair; and one cause of action for breach of the implied covenant of good faith and fair

dealing and bad faith denial of contract, seeking punitive damages against the individual defendants in the amount of $1 million.

Defendants demurred to the last cause of action, contending plaintiff had not complied with requirements of the Tort Claims Act (Gov. Code, § 810 et seq.). The trial court sustained the demurrer without leave to amend, but on different grounds. The court ruled "that the individual defendants cannot be liable for breach of the contract or implied covenant since they were not parties to the contract."

Plaintiff moved for summary judgment. The trial court granted the motion as against all defendants, awarding plaintiff full benefits for unused vacation time and full reimbursement of personal funds paid for piano repair.

Defendants appeal. They do not challenge the summary judgment regarding plaintiff's reimbursement for personal funds paid for piano repair. They contend the judgment should be reversed as to plaintiff's right to benefits for unused vacation time for any of three reasons:

(1)   In her separate statement of undisputed facts accompanying her summary judgment motion, submitted in compliance with Code of Civil Procedure section 437c, subdivision (b), plaintiff failed to indicate whether she had taken any vacation during her employment with the district.

(2)   Plaintiff's claim for vacation pay is governed by Education Code section 45197 and, as such, is "[a]n action upon a liability created by statute, other than a penalty or forfeiture" subject to the three-year statute of limitations under Code of Civil Procedure section 338, subdivision (a).

(3)   As a "regular classified employee," plaintiff could accrue vacation time for only one or possibly two years under Education Code section 45197, subdivision (d).

Plaintiff cross-appeals from the trial court's order sustaining the individual defendants' demurrer to her last cause of action.

After the parties filed their appellate briefs, we asked them to submit supplemental briefs addressing the following issue: "Whether a lump sum payment to plaintiff for accrued but unused vacation time would violate the California Constitution, article IV, section 17, or article XI, section 10."

### DEFENDANTS' APPEAL

The California Constitution, article IV, section 17, provides: "The Legislature has no power to grant, or to authorize a city, county, or other public

body to grant, extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or to authorize the payment of a claim against the State or a city, county, or other public body under an agreement made without authority of law." Like its predecessor—article IV, section 32—"[t]his section prohibits the granting of extra compensation or allowance to a public servant after service rendered. This section repudiates claims based upon moral obligations, growing out of service to the state [citations] . . . ." (*Veterans' Welfare Board* v. *Riley* (1922) 188 Cal. 607, 623 [206 P. 631].)

The California Constitution, article XI, section 10, subdivision (a), provides: "A local government body may not grant extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or pay a claim under an agreement made without authority of law."

In numerous cases stretching back more than 50 years, public employees have sought to recover accumulated vacation and sick leave, as well as compensation for overtime and for work performed out of class. Generally, the courts have permitted recovery only when specifically authorized by a statute, ordinance, resolution, rule, regulation, or contract in effect at the time the work was performed or the leave was earned.

In one of the first reported cases, a former Los Angeles harbor board official sought a lump sum payment for vacation time he elected not to take during his employment. (*Nicholson* v. *Amar* (1935) 7 Cal.App.2d 290 [45 P.2d 697].) The official pointed to a harbor board resolution that seemed to allow for accumulation of and reimbursement for unused vacation. The court focused on the city charter, which provided that " '[e]very person who shall have been in the service of the city, continuously, for one year, shall be allowed a vacation of two weeks on full pay, annually.' " (*Id.* at p. 291.) Holding that "[t]he untaken vacations were waived . . . ," the court reasoned: "The official was employed under a fixed salary, and there is no charter or other legal provision for a double payment for any part of his services, and the resolution of the board was of no effect in such circumstances. Petitioner accepted his position under the provision that he should be *allowed* two weeks annual vacation with pay. 'Vacation', in this sense, means on the one hand a beneficent surcease from regular duty for two weeks each year, that a period of freedom, rest or diversion for the employee may be enjoyed, and upon the other a gain to the employer through a recuperated and better satisfied employee. Accumulation of vacation would entirely negative such purposes. Had the charter intended to award a faithful

employee by providing a bonus for continued uninterrupted service it would have so provided. Such provision would effect exactly the opposite result to the charter's purpose, as we see it." (*Ibid.*)

Seven years later, in *Pohle* v. *Christian* (1942) 21 Cal.2d 83 [130 P.2d 417], the Supreme Court awarded compensation for accumulated vacation days to a state civil servant whose position had been abolished. The court relied upon rules and regulations of the State Personnel Board providing that " '[w]hen an employee is separated from the service and has not been granted his vacation, he shall be entitled to unused portions of vacation . . . .' " (*Id.* at pp. 89-90.) The court ruled that appellant was "entitled to the vacation allowance claimed by him unless he waived it by refusing to take a vacation before he was laid off." (*Id.* at p. 90.) In fact, like the employee in *Nicholson*, the employee in *Pohle* had refused to take vacation. But the respondents in *Pohle* had not raised waiver as a defense, and the employee prevailed.

Encouraged by *Pohle*, public employees increasingly sought lump sum payments. And in cases such as *Howard* v. *Lampton* (1948) 87 Cal.App.2d 449 [197 P.2d 69] and *Clark* v. *State Personnel Board* (1943) 56 Cal.App.2d 499 [133 P.2d 11], the courts enthusiastically complied. But the lower courts were misreading *Pohle* and, in *Martin* v. *Henderson* (1953) 40 Cal.2d 583 [255 P.2d 416], the Supreme Court called a halt. The court observed that "[t]he basic fallacy in the *Howard* and *Clark* cases was the court's assumption that, in the absence of any statutory provision, a civil service employee had a right to compensatory time off for overtime work. Those decisions are clearly distinguishable from the *Pohle* case, where the employee had a right granted by statute to a specified amount of vacation time." (*Id.* at p. 589, italics added.)

In *Martin*, two highway patrol officers sought compensation for overtime. An order issued by the chief of highway patrol provided for compensatory time off during an officer's employment, but plaintiffs sought cash payments after the termination of their employment. The court approved cash payments for overtime worked after the effective date of Government Code section 18005, which then provided: " 'Upon a separation from service, without fault on his part, a person shall be entitled to a lump sum payment as of the time of separation . . . for any time off to which the person is entitled by reason of previous overtime work where compensating time off for overtime work is provided for by the appointing power or by the rules of the board. . . .' " (*Id.* at p. 587.) But the court refused to award compensation for overtime worked prior to the effective date of Government Code section 18005. There was no authorizing statute before that date, and the court observed that Government Code section 18005 and related statutes

"were not, and could not be, retroactive." (*Id.* at p. 591.) Retroactive application, the court concluded, would violate article IV, section 32—now article IV, section 17—of the California Constitution, prohibiting extra compensation to public employees.

In a companion case to *Martin*, the court entirely denied another highway patrol officer's request for payment for overtime worked but not compensated during his period of service. In *Jarvis* v. *Henderson* (1953) 40 Cal.2d 600 [255 P.2d 426], all of the overtime was worked prior to the effective date of Government Code section 18005. The court explained: "In the absence of a statute specifically authorizing compensation in addition to a fixed monthly salary, there is no right to payment for overtime. [Citation.] When the salary is fixed by time, as by the day or month, the employee is bound, in the absence of statute, to render services without regard to the number of hours worked. [Citation.] The rule is equally applicable to work performed upon what otherwise would have been days off or holidays." (*Id.* at p. 606.)

*Nicholson*, *Pohle*, and *Martin* served as the basis for the Attorney General's response to the following question in 1959: "May a city organized under the provisions of chapter 1, division 2 of title 4, of the Government Code compensate employees upon their separation from service with the city for accumulated vacation by a lump sum payment in lieu of such vacation in the absence of an ordinance, resolution, rule or regulation adopted by the city council establishing such a policy?" (32 Ops.Cal.Atty.Gen. 309 (1959).) The Attorney General responded in the negative: "compensation for accrued but unused vacation credits by a lump sum payment to a public employee upon separation is not possible in the absence of specific authorization by the responsible agency of government. Furthermore, a grant of such compensation to an employee after separation and in the absence of necessary prior authorization would be barred by the prohibition against payment to a public employee for services rendered in the past contained in article IV, section 32 [now article IV, section 17], of the Constitution of the state of California." (*Id.* at p. 312.)

In later cases, the courts have continued to approve lump sum payments only when specifically authorized in advance. In *Adams* v. *City of Modesto* (1960) 53 Cal.2d 833 [3 Cal.Rptr. 561, 350 P.2d 529], for example, the court recognized a city employee's right upon his retirement to compensation for unused vacation based on a prior city counsel resolution creating an absolute entitlement.

But in *Van Riessen* v. *City of Santa Monica* (1976) 63 Cal.App.3d 193 [133 Cal.Rptr. 618], the court refused to compensate firemen for accumulated sick

leave in the absence of specific authorization. The court observed that "[a] 'public employee is entitled only to such compensation as is expressly provided by statute or ordinance regardless of the extent of services actually rendered. [Citations.]' (*Markman* v. *County of Los Angeles* [1973] 35 Cal.App.3d 132, 135 [110 Cal.Rptr. 610].) It is 'the settled rule that compensation for official services depends entirely upon the law; that statutes relating to such compensation are strictly construed in favor of the government; that a public officer may only collect and retain such compensation as is specifically provided by law, and that any money paid by a government agency without authority of law may be recovered from such officer.' (*County of San Diego* v. *Milotz* [1956] 46 Cal.2d 761, 767 [300 P.2d 1].)" (*Id.* at pp. 199-200.)

And in *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14 [157 Cal.Rptr. 706, 598 P.2d 866], the court disapproved a lump sum payment to deputy sheriffs for overtime. Citing article IV, section 17, and article XI, section 10, the court observed that an "employee's rights are set by the law applicable at the time compensable services are rendered. The Constitution forbids state or local enactments which retroactively grant compensation for work already performed. . . . Thus, where statutes or ordinances in effect when overtime hours were logged provided no right to compensation therefor, the public entity may not subsequently grant it. [Citations.]" (*Id.* at p. 23.)

Having laid the groundwork for our constitutional analysis, we turn to the particular circumstances of the case at bar. The parties to this action agree that, as the district secretary, plaintiff was what is known in statutory parlance as a "classified employee."

Education Code section 45103 provides that "[t]he governing board of any school district shall employ persons for positions not requiring certification qualifications. The governing board shall . . . classify all such employees and positions. The employees and positions shall be known as the classified service." Education Code "[s]ection 45101, subdivision (a) provides: "'Classification' means that each position in the classified service shall have a designated title, a regular minimum number of assigned hours per day, days per week, and months per year, a specific statement of the duties required to be performed by the employees in each position, and the regular monthly salary ranges for each such position.' Employees in the classified service enjoy a number of benefits guaranteed by statute, including paid holidays (§ 45203), paid vacation (§ 45197), sick leave (§ 45191), increased pay for overtime (§ 45128) and job security (§ 45113). Jobs in the classified service apparently include custodians, bus drivers, cafeteria workers, clerical staff, some instructional aides, and other nonteaching and

nonadministrative positions." (*California Sch. Employees Assn.* v. *Oroville Union High Sch. Dist.* (1990) 220 Cal.App.3d 289, 293, fn. 3 [269 Cal.Rptr. 90].)

Subdivisions (a), (b), and (c) of Education Code section 45197 set forth the amount of annual vacation available to classified employees. Subdivision (d) provides that a classified employee's "[v]acation may, with the approval of the employer, be taken at any time during the school year. If the employee is not permitted to take his full annual vacation, the amount not taken shall accumulate for use in the next year or be paid for in cash at the option of the governing board." Subdivision (h) provides: "Upon separation from service, the employee shall be entitled to lump-sum compensation for all earned and unused vacation . . . ." In sum, subdivision (h) provides that an employee who leaves service shall be compensated for accumulated vacation, but subdivision (d) governs an employee's right to accumulate vacation. Therefore, the meaning of subdivision (d) is critical to the disposition of this case.

The first sentence of subdivision (d) plainly contemplates that vacation will be taken during the year it is earned: "Vacation may, with the approval of the employer, be taken at any time during the school year." Indeed, to facilitate that policy, subdivision (f) provides that "[t]he employee may be granted vacation during the school year even though not earned at the time the vacation is taken." Thus, for example, an employer may permit an employee who earns two weeks' vacation per year to use the entire two weeks in the tenth month of the year.

The second sentence of subdivision (d) sets forth alternatives when "the employee *is not permitted* to take his full annual vacation . . ." during the school year. (Italics added.) Either "the amount not taken shall accumulate for use *in the next year* or be paid for in cash *at the option of the governing board*." (Italics added.) Thus, the second sentence reinforces the presumption that vacation will ordinarily be taken during the year it is earned. But vacation that "the employee is not permitted to take" carries over for just one year. Then, the employee must either use the accumulated vacation during the succeeding year or, at the employer's option, be compensated for it.

■ Under the express terms of Education Code section 45197, plaintiff carried forward no vacation time during the years she was employed by the district. Plaintiff acknowledges that the district had no vacation policies that would countermand the provisions of Education Code section 45197. She

also acknowledges that, during her employment, she never asked to take vacation, she never requested compensation in lieu of vacation, and she was never denied the right to take vacation. In her deposition, plaintiff noted that auditors visited the school annually. They "would say 'What about vacation, Helen?' And I'd say 'Forget it. I'm happy doing what I'm doing. And I'm not here to make money off the school.' " The record contains "Notes to Financial Statements" prepared by the auditors in 1985—less than one year before plaintiff retired. "Note E—Commitments and Contingencies" states: "The District has no accrued vacation."

Education Code section 45197 simply does not permit a classified employee to refuse to take vacation year after year and then, upon retirement, present the public school employer with a bill for the total. And plaintiff has cited no other statute, ordinance, resolution, rule, or regulation adopted prior to or during her employment that would authorize a lump sum payment upon retirement. Absent specific authorization, such a payment constitutes extra compensation for work already performed.

Plaintiff's reliance upon *San Joaquin County Employees' Assn., Inc.* v. *County of San Joaquin* (1974) 39 Cal.App.3d 83 [113 Cal.Rptr. 912] and *Gai* v. *City Council* (1976) 63 Cal.App.3d 381 [133 Cal.Rptr. 753] is misplaced. In *San Joaquin*, the court concluded that a salary increase retroactive to the expiration date of a salary ordinance did not violate the state Constitution. Because the county employees' salaries were indefinite during the interim period, while collective bargaining was conducted, the increase did not constitute extra compensation. In *Gai*, the court held that the City of Fresno would not violate the state Constitution by retroactively increasing the salaries of certain municipal employees. The city charter specifically provided that the employees would not be paid less than the prevailing wage for comparable work in the private sector, and the employees were able to show that workers in the private sector had earned more. Thus, in *San Joaquin*, the higher salary was not extra compensation because the amount of compensation had not yet been established. And in *Gai*, the additional money was not extra compensation in violation of constitutional principles because the city charter specifically authorized the payment. (See also *Jarvis* v. *Cory* (1980) 28 Cal.3d 562 [170 Cal.Rptr. 11, 620 P.2d 598]; *Goleta Educators Assn.* v. *Dall'Armi* (1977) 68 Cal.App.3d 830 [137 Cal.Rptr. 324]; 65 Ops.Cal. Atty.Gen. 66 (1982); 59 Ops.Cal.Atty.Gen. 166 (1976).) *San Joaquin* and *Gai* stand in stark contrast to the instant case in which plaintiff's salary was set during her years of employment, and she has pointed to no provision that specifically authorizes additional payment.

Plaintiff's reliance upon cases governing the right of an employee in the private sector to a lump sum payment for accumulated vacation is also misplaced. (See *Suastez* v. *Plastic Dress-Up Co.* (1982) 31 Cal.3d 774 [183 Cal.Rptr 846, 647 P.2d 122]; *Henry* v. *Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1 [272 Cal.Rptr. 134].) Such cases interpreting Labor Code section 227.3 have no application to the case of a classified public school employee, whose right to payment for accumulated vacation is governed by the Education Code and by the constitutional prohibition against extra compensation for public employees.

We hold that a lump sum payment to plaintiff for unused vacation, except that earned in the months actually worked during the last year, violates the California Constitution, article IV, section 17, and article XI, section 10. We conclude that plaintiff has a right to payment for vacation accrued during the months she worked in her last year of employment only.

### PLAINTIFF'S CROSS-APPEAL

In her fourth cause of action, plaintiff asserted claims of tortious breach of the implied covenant of good faith and fair dealing and bad faith denial of contract. The basis for the claims were the individual defendants' refusal to recognize plaintiff's right to accumulated vacation, defendants' alleged delay in submitting information to the Public Employees Retirement System, and defendants' refusal to reimburse plaintiff for personal funds paid for piano repair. Plaintiff alleged that these "actions were wanton, willfull [*sic*], abusive and directed to cause plaintiff harm for which plaintiff asks for exemplary damages against each of the individual defendants, however not against the public entity Lakeside School District."

As explained above, defendants demurred to the fourth cause of action, asserting that plaintiff had not complied with provisions of the Tort Claims Act (Gov. Code, § 810 et seq.). The trial court sustained the demurrer without leave to amend, ruling "that the individual defendants cannot be liable for breach of the contract or implied covenant since they were not parties to the contract." We conclude that the trial court's ruling was correct.

In her opening brief on the cross-appeal, plaintiff explains that her fourth cause of action is asserted "after the fashion" of *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158]. In that action on a commercial contract, the Supreme Court

"recognize[d] that a party to a contract may incur tort remedies when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists." (*Id.* at p. 769.) While the Supreme Court has shown some willingness to permit claims for tortious breach outside the insurance arena, it has not, to our knowledge, approved such claims in actions against noncontracting third parties.

Plaintiff had no written contract of employment. If she worked pursuant to an oral or implied contract, it was surely a contract with the district and not with the individual members of the new school board or with Kelban, who assumed his position a few weeks before plaintiff's retirement. Nor does plaintiff allege in her complaint that the individual defendants were parties to her employment contract. Like the trial court, we conclude that plaintiff's fourth cause of action was not properly asserted against the individual defendants.

■ But we also conclude that the trial court abused its discretion in sustaining the demurrer without leave to amend. As we understand the proceedings below, the trial court did not afford the parties an opportunity to address the basis for its ruling on the demurrer. The court should have done so. (See *Moore* v. *California Minerals etc. Corp.* (1953) 115 Cal.App.2d 834 [252 P.2d 1005].) Moreover, "[i]f there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend." (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245 [74 Cal.Rptr. 398, 449 P.2d 462].) Although our reversal of the summary judgment regarding vacation pay would appear to narrow plaintiff's fourth cause of action considerably, we cannot say from our vantage point that there is no "reasonable possibility" of a successful amendment.

DISPOSITION

The summary judgment is reversed to the extent that it awards plaintiff a lump sum for vacation she earned but did not use during her employment except for that earned in the months actually worked during the last year. In all other respects, the summary judgment is affirmed.

The trial court's order sustaining defendants' demurrer to plaintiff's fourth cause of action in the third amended complaint is reversed to the extent that it denies plaintiff leave to amend. Plaintiff shall be afforded the opportunity

to amend the fourth cause of action upon remand. Should plaintiff elect to amend, defendants shall have the opportunity to demur on the grounds previously asserted or any other.

Each side shall bear its own costs on appeal.

Agliano, P. J., and Cottle, J., concurred.

The petition of appellant Helen Seymour for review by the Supreme Court was denied February 20, 1992. Kennard, J., was of the opinion that the petition should be granted.