[No. A125679. First Dist., Div. Four. Aug. 18, 2010.]

THE CALIFORNIA CORRECTIONAL PEACE OFFICERS'
ASSOCIATION et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

648

**COUNSEL**

David A. Sanders, Daniel M. Lindsay and David W. Burnett for Plaintiffs and Appellants.

Kronick, Moskovitz, Tiedemann & Girard, David W. Tyra, Kristianne T. Seargeant; K. William Curtis, Warren C. Stracener, Linda A. Mayhew, Christopher E. Thomas and Jake M. Hurley for Defendants and Respondents.

**OPINION**

**RUVOLO, P. J.**—The California Correctional Peace Officers' Association (CCPOA) contends that the State of California (the State), through California's Department of Corrections and Rehabilitation (CDCR),[1] has violated various Labor Code provisions, as well as wage orders promulgated by the Industrial Welfare Commission (IWC), by failing to provide correctional officers with meal periods and by failing to pay for the missed wage periods. According to CCPOA, the Legislature intended that the State provide its correctional officers with meal periods as required by Labor Code section 512 and IWC wage order No. 17, and that the State must pay for missed meal periods as

---

[1] We shall refer to the State and CDCR collectively as respondents, and shall refer to them individually where appropriate.

required by Labor Code section 226.7.[2] We disagree, and affirm the trial court's determination that the subject wage and hour statutes do not apply to public employees.

## BACKGROUND

CCPOA is the recognized employee organization for State employees in State Bargaining Unit 6 (BU 6). CDCR is the agency charged with administering the State's prison system.

By an amended complaint filed in July 2008, CCPOA filed a class action against respondents, alleging, among other things, violations of sections 226.7 and 512, and IWC wage order No. 17. According to the amended complaint, CDCR's failure to provide meal breaks or a safe, hygienic place to eat forces officers to "choose between working a full shift without eating, or 'eating on the run,' while working in one of California's most dangerous jobs in one of the State's least hygienic environments."

This appeal arises from the trial court's order after hearing on a motion to determine legal issues, in which it ruled that sections 226.7 and 512 do not apply to public employers like the State, and that IWC wage order No. 4, not IWC wage order No. 17, applies to BU 6 employees.[3]

## DISCUSSION

A. *Standard of Review*

■ "At issue in this appeal is the construction of the relevant statutes and wage orders. The facts are not in dispute. Therefore, this court is faced with questions of law requiring independent review. [Citation.] [¶] In construing a statute, the court's fundamental task is to ascertain and effectuate the intent of the Legislature. [Citation.] The statutory language itself is the most reliable indicator. Therefore, the first step is to scrutinize the statute's words, assigning them their usual and ordinary meanings, and construing them in context. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 [48 Cal.Rptr.3d 108, 141 P.3d 225].)" (*Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 734–735 [95 Cal.Rptr.3d 53] (*Johnson*).) In this regard, the nature and purpose of the statute must be considered. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 324 [25 Cal.Rptr.3d 320, 106 P.3d 976].) Sentences are not viewed in isolation but

---

[2] All further undesignated statutory references are to the Labor Code.

[3] Both parties stipulated that the trial court's ruling was dispositive of all causes of action raised in the first amended complaint.

in light of the statutory scheme. (*Ibid.*) Finally, "if the language allows more than one reasonable construction, the court looks to such aids as the legislative history of the measure and maxims of statutory construction. [Citation.]" (*Johnson, supra,* 174 Cal.App.4th at p. 735.)

## B. *Sections 512 and 226.7 Do Not Apply*

Before addressing the merits of CCPOA's claim that the Labor Code sections pertaining to meal breaks apply to public employees, we begin with a brief review of the applicable statutory framework.

"The IWC, established by the Legislature in 1913, was the state agency authorized to formulate the regulations, or wage orders, that govern employment in California. (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 700 [166 Cal.Rptr. 331, 613 P.2d 579].) In fulfilling its broad statutory mandate to regulate wages, hours, and working conditions of California employees, the IWC acted in a quasi-legislative capacity. (*Id.* at p. 702.) Although the IWC was defunded effective July 1, 2004, its wage orders remain in effect. (*Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 434, fn. 2 [41 Cal.Rptr.3d 482].)" (*Johnson, supra,* 174 Cal.App.4th at p. 735.)

"In 1999, in response to the IWC's elimination of daily overtime rules in certain industries, the Legislature passed and the Governor signed Assembly Bill No. 60 (1999–2000 Reg. Sess.), the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. (Stats. 1999, ch. 134, § 14 (the Act).) Among other things, this legislation restored the eight-hour workday (§ 510) and mandated that the IWC conduct public hearings and adopt consistent wage orders (§ 517, subd. (a)), including orders pertaining to meal and rest periods (§ 516). [Citations.] The Act established a new statutory scheme governing hours of labor and overtime compensation for all industries and occupations. [Citation.]

"The Legislature enacted two provisions relating to meal periods. The first, section 512, was enacted in 1999. (Stats. 1999, ch. 134.) In pertinent part, it provides: '(a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . . An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.'

"Later in the 1999–2000 Regular Session, additional legislation was introduced to strengthen the enforcement of existing wage and hour standards

contained in current statutes and wage orders. (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as introduced Feb. 24, 2000, p. 7.) Section 226.7 was enacted as part of that legislation (effective on Jan. 1, 2001). It states: '(a) No employer shall require any employee to work during any meal or rest period . . . . [¶] (b) If an employer fails to provide an employee a meal period or rest period . . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.' " (*Bearden v. U.S. Borax, Inc., supra*, 138 Cal.App.4th at p. 434.) Section 226.7 provides a "premium wage intended to compensate employees" for the failure to provide meal and rest periods. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1114 [56 Cal.Rptr.3d 880, 155 P.3d 284].)

Recently, in *Johnson, supra*, 174 Cal.App.4th 729, the court considered and rejected claims very similar to those advanced in this case. In *Johnson*, a water district employee filed a class action complaint against his employer, the Arvin-Edison Water Storage District (District), alleging that he, and a putative class of current and former District employees, had been, among other things, denied meal breaks in accordance with the Labor Code and IWC wage orders. (*Id.* at p. 733.) The trial court sustained the District's demurrer on the ground that, as a public entity, it was exempt from the challenged wage and hour laws. (*Ibid.*) The plaintiff argued that, "contrary to the trial court's ruling, public employers are subject to the California wage and hour provisions at issue unless they are expressly made exempt." (*Ibid.*) Similar to CCPOA here, the plaintiff in *Johnson* argued, "under statutory construction rules, it [was] evident that the Legislature intended that water storage districts provide their employees with overtime and meal periods as required by Labor Code sections 510 and 512, and IWC wage order No. 17. [Plaintiff] further assert[ed] that these Labor Code requirements [would] not infringe on the execution of the District's sovereign powers." (*Ibid.*, fn. omitted.)

■ Rejecting these claims, the *Johnson* court held: "[U]nless Labor Code provisions are specifically made applicable to public employers, they only apply to employers in the private sector. Since section[] . . . 512 do[es] not expressly apply to public entities, [it is] not applicable here. Further, applying section[] . . . 512 to the District would infringe on its sovereign power to regulate its workforce." (*Johnson, supra*, 174 Cal.App.4th at p. 733.)

CCPOA asserts *Johnson* was incorrectly decided because there is evidence the Legislature intended to include public entities. It refers to section 512, which specifically exempts certain employees (subd. (c) [wholesale baking industry] & subd. (d) [motion picture industry]), yet is silent as to public

employees. The implication, CCPOA asserts, is that the failure to exclude public employees as well indicates legislative intent to include them in the statute's coverage.

**(4)** This argument runs contrary to well-established principles of statutory construction. Our Supreme Court has noted: "A traditional rule of statutory construction is that, absent express words to the contrary, governmental agencies are not included within the general words of a statute. [Citations.]" (*Wells v. One2One Learning Foundation, supra,* 39 Cal.4th at p. 1192.) "The Legislature has acknowledged that this rule applies to the Labor Code. In the context of reviewing the legislative history of an amendment to provide whistleblower protection to public employees (§ 1102.5), the court in *Campbell v. Regents of University of California*[, *supra,*] 35 Cal.4th 311 . . . , quoted the Senate Committee on Industrial Relations as follows: ' "These provisions are silent as to their applicability to public employees. Generally, however, provisions of the Labor Code apply only to employees in the private sector unless they are specifically made applicable to public employees." ' (35 Cal.4th at p. 330.) **(5)** Thus, [CCPOA's] position is contrary to an established rule that has been recognized by the Legislature, i.e., public entities are not subject to a general statute unless expressly included. The Legislature's iteration of this rule is an indication that the Legislature follows it." (*Johnson, supra,* 174 Cal.App.4th at p. 736.)

Trying the opposite approach, CCPOA alternatively argues that because public employees are specifically excluded from the related Labor Code sections, we should infer that the Legislature intended sections 226.7 and 512 to apply public entities. CCPOA points out that both sections 220 and 226.7 are contained in division 2, part 1, chapter 1 of the Labor Code, while sections 512 and 512.5 are contained in division 2, part 2, chapter 1 of the Labor Code. Subdivision (a) of section 220 provides that certain Labor Code sections pertaining to the timing of wage payments and penalties for untimely payments that are applicable in specific industries "do not apply to the payment of wages of employees directly employed by the State of California." CCPOA contends that because the Legislature expressly exempted public entities from these specific Labor Code provisions referred to in subdivision (a) of section 220, the Legislature must have intended the entirety of division 2, part 1, chapter 1 to be generally applicable to public entities.

■ Aside from the bald assertion that section 220, subdivision (a) "confirms that [s]ection 226.7 applies to state employers," CCPOA provides no argument or authority to support its position. In light of the statute's plain language, this deficiency is not surprising. Section 220, subdivision (a) merely provides that in certain instances (§§ 201.5 [motion picture industry], 201.7 [oil drilling], 203.1 [fringe benefits], 203.5 [failure of bonding company], 204 [semimonthly payments], 204a [employees of several employers],

204c [semimonthly payments exception], 204.1 [employees of vehicle dealers], 205 [agricultural and domestic employment], 205.5 [agricultural employees]), the statutory requirements pertaining to the timely payment of wages do not apply to employees directly employed by the State. These specific exemptions cannot, by implication, be read as making division 1, part 1, chapter 1 of the Labor Code generally applicable to public entities. "Such an interpretation would violate the maxim that '[w]hen the Legislature "has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded." ' [Citation.]" (*Johnson, supra*, 174 Cal.App.4th at p. 737.)

Additionally, CCPOA attempts to rely on section 512.5 arguing that, by providing the IWC with the power to exempt public agency employees under that section,[4] it is logical to infer that the Legislature intended section 512 and the IWC wage orders automatically to include public agency employees. However, neither the statute's language nor its legislative history support such an interpretation.

■ Moreover, this argument too was rejected by the *Johnson* court. As the court explained, "[s]ection 512.5 provides for a two-step process. The IWC must first adopt or amend an order that applies to one specific type of public agency employee, i.e., an employee who operates commercial motor vehicles. This section was enacted in anticipation of such an IWC action. (Assem. Bill No. 98 (2003–2004 Reg. Sess.) as amended Mar. 12, 2003.) [F]urther, in analyzing Assembly Bill No. 98, the Senate Committee on Labor and Industrial Relations recognized that, under existing law, public employers were exempt from the meal and rest period provisions. Thus, section 512.5 merely codifies a potential limited IWC wage order exception to the general public employer exemption. It does not indicate a legislative intent to automatically apply section 512 and IWC wage orders to public employers." (*Johnson, supra*, 174 Cal.App.4th at pp. 737–738, fn. omitted.)

C. *Wage Order No. 17 Is Inapplicable*

■ "Section 1173 grants the IWC a broad mandate to regulate the working conditions of employees in California, including the setting of standards for minimum wages and maximum hours. (See *Industrial Welfare Com. v. Superior Court*[, *supra*,] 27 Cal.3d 690, 701–702 . . . .) To that end, the IWC has promulgated 17 different wage orders that apply to distinct

---

[4] Section 512.5, subdivision (a) provides that, "if the [IWC] adopts or amends an order that applies to an employee of a public agency who operates a commercial motor vehicle, it may exempt that employee from the application of the provisions of that order which relate to meal periods or rest periods . . . ."

groups of employees. (Cal. Code Regs., tit. 8, §§ 11010–11170.)" (*Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1253 [72 Cal.Rptr.3d 171].)

■ The wage order at issue in this case is IWC wage order No. 17, the provisions of which are codified in California Code of Regulations, title 8, section 11170. The IWC promulgated wage order No. 17, effective March 1, 2000, to implement wage order amendments required by Assembly Bill No. 60 (1999–2000 Reg. Sess.). (*Johnson, supra*, 174 Cal.App.4th at p. 739.) Wage order No. 17 is a catchall order, which subsumes "Miscellaneous Employees" who are not otherwise covered by specific wage orders. It applies to "[a]ny industry or occupation not previously covered by, and *all employees not specifically* exempted in, the Commission's wage orders in effect in 1997, or otherwise exempted by law . . . ." (Cal. Code Regs., tit. 8, § 11170, subd. 1(A), italics added.)

■ CCPOA contends that IWC wage order No. 17 applies to the CDCR's employees because peace officers were not covered or exempted by any wage order in effect in 1997. CCPOA misreads the scope of the wage orders in effect in 1997. It is well established that public employees have been historically exempt from IWC wage orders. (See, e.g., *Monzon v. Shaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 29 [273 Cal.Rptr. 615] [noting exclusion of public employees from general minimum wage order]; see also *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 166–167 [95 Cal.Rptr.2d 10] [holding public employee not entitled to overtime provisions in IWC wage order No. 4].) Indeed, with two exceptions pertaining to agricultural occupations and household occupations (Cal. Code Regs., tit. 8, §§ 11140, 11150), public employees were expressly exempted from the IWC wage orders in effect in 1997 (*id.*, §§ 11010, subd. 1(B), 11020, subd. 1(B), 11030, subd. 1(B), 11040, subd. 1(B), 11050, subd. 1(C), 11060, subd. 1(B), 11070, subd. 1(B), 11080, subd. 1(B), 11090, subd. 1(B), 11100, subd. 1(C), 11110, subd. 1(B), 11120, subd. 1(B), 11130, subd. 1(B)). By its terms, wage order No. 17 applies to "all employees *not specifically exempted*" in the wage orders in effect in 1997. (Italics added.) As public employees were exempt from all but two of the wage orders in effect in 1997,[5] wage order No. 17 does not apply to CDCR employees.

Finally, we note that in enacting IWC wage order No. 17 "one of the IWC commissioners explained that this wage order would apply to an industry that was 'something altogether new that couldn't be identified as belonging in any other wage order.' " (*Johnson, supra*, 174 Cal.App.4th at p. 739, fn. omitted.) Correctional facilities, however, hardly qualify as new industry. "Accordingly,

---

[5] Appellant does not argue that CDCR employees qualify as agricultural or household workers.

the IWC must have been aware of this industry when wage order No. 17 was enacted, i.e., it was not 'altogether new.' " (*Id.* at p. 740.)[6]

In sum, IWC wage order No. 17 does not apply in the instant case.[7]

## D. *Public Policy*

Lastly, CCPOA contends that the "professed purpose" of section 512 in "using meal breaks as a means to achieve workplace safety" is meaningless if not applied to state employees. In support of this assertion, CCPOA argues at length about the importance of employee meal periods and the connection to employee health and safety. CCPOA maintains that meal periods are especially important for state employees who "work in all manners of industry closely intertwined with public safety, including engineering, law enforcement, and fire fighting, all of which require an employee to be alert and in good health."

We have no quarrel with the concept of meal breaks as generally being beneficial to all employees. However, our role as an appellate court is to interpret the law, not insert what the Legislature has omitted. (See Code Civ. Proc., § 1858; *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1079 [55 Cal.Rptr.3d 14].) To that end, it is not the judiciary's role to second-guess the wisdom of the Legislature's choices. (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1099 [282 Cal.Rptr. 841, 811 P.2d 1025].)

---

[6] CCPOA cites *Bearden v. U.S. Borax, Inc., supra,* 138 Cal.App.4th 429, claiming it supports its argument that, to the extent IWC wage order No. 17 exempts public employees from meal periods, this "purported exemption is invalid due to its conflict with section 512." *Bearden,* unlike the instant case, involved the rights of employees in the *private sector* to meal breaks. This case has no application in determining the rights of public employees to meal periods. (See *Seymour v. Christiansen* (1991) 235 Cal.App.3d 1168, 1179 [1 Cal.Rptr.2d 257] [cases involving private sector employees not applicable in determining vacation time of public school employee].)

[7] As noted, the trial court found that IWC wage order No. 4 was applicable to BU 6 employees. We express no opinion regarding the applicability of that wage order in the instant case, except to note that it, like the majority of wage orders, specifically exempts public employees from its meal period provisions. (Cal. Code Regs., tit. 8, § 11040, subd. 1(B); see also *id.,* §§ 11010, subd. 1(B), 11020, subd. 1(B), 11030, subd. 1(B), 11050, subd. 1(C), 11060, subd. 1(B), 11070, subd. 1(B), 11080, subd. 1(B), 11090, subd. 1(B), 11100, subd. 1(C), 11110, subd. 1(B), 11120, subd. 1(B), 11130, subd. 1(B), 11160, subd. 1(B).) Also, we need not consider the alternative rationale, urged by the State below, that application of section 512 to public employees would infringe on the State's sovereign powers.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to recover their costs on appeal.

Reardon, J., and Sepulveda, J., concurred.

A petition for a rehearing was denied October 7, 2010.